ROBERT SELLERS, plaintiff in error, *v.* THE PEOPLE OF THE STATE OF ILLINOIS, defendants in error.

*Error to Shelby.*

Where a juror, a short time previous to the trial of a prisoner for murder, and on different occasions, said he believed the prisoner "would be hung; that he ought to be hung; that nothing could save him; that salt could not save him; and that there was no law to clear him," and subsequently went to the jail, and told the prisoner that he ought not to be hung, and, if he were on the jury, he should not be hung; but afterwards, when sworn on the trial, touching his competency as a juror, he stated that he had formed and expressed no opinion; and no objection being made to him, he was sworn on the jury, and the prisoner was convicted: a new trial was granted, on the ground of the incompetency of the juror.

It has always been held, that if a juror prejudge a cause, and it is unknown to the failing party in time to challenge, it is a good cause for a new trial.

THIS cause was heard in the Court below, at the May term, 1842, before the Hon. Samuel H. Treat.

E. D. BAKER and A. T. BLEDSOE, for the plaintiff in error.

J. LAMBORN, Attorney General, for the defendants in error.

DOUGLASS, Justice, delivered the opinion of the Court:

At the May term, 1842, the grand jury of Shelby county returned into Court a bill of indictment against Robert Sellers, for the murder of James Rodman. The prisoner appeared, and pleaded to the indictment, and, a trial being had, was convicted, and sentenced to be executed on the 21st day of June, 1842. After verdict, and before sentence, the prisoner moved for a new trial, upon the ground, that Alfred Howlett, one of the jurors, had expressed an opinion against the prisoner, previous to the trial, and, when examined, touching his competency as a juror, testified that he had formed, and expressed no opinion in relation to his guilt or innocence. Upon the hearing of the motion for a new trial, various affidavits were read, as well on behalf of the prosecution, as the prisoner, all of which were embodied in the bill of exceptions.

Addison Moran states, "that previous to the trial of this

cause, in conversation with said Howlett, on the subject of the guilt of Sellers, he heard said Howlett say, that he believed said Sellers would be hung, and that he ought to be hung, and that nothing could save him; that salt could not save him." This conversation occurred about three weeks before the trial.

Jacob Kellar states, that "previous to the trial, he heard said Howlett say, that he believed said Sellers would be hung, and that there was no law to clear him." This was within three weeks of the time of trial.

John D. Brewster states, that "in a conversation with said Howlett, on the same day he was summoned as a juror, this affiant told him he had better be careful, or the sheriff would summon him as a juror, and Howlett replied, he was not afraid of that, as they could not make him serve on the jury; and from all Howlett said, the impression was left on the mind of this affiant, that said Howlett had formed an opinion in relation to the guilt or innocence of Sellers, and that he could not be made to serve on the jury, on the trial of this cause."

Robert Sellers, the prisoner, states, "that he had not any knowledge, either directly or indirectly, of the fact that Alfred Howlett, one of the jurors, had expressed or formed any opinion, either for or against him, in relation to his guilt or innocence, under the indictment, or for any offence for which he has been tried, and that he has been informed, and believes, that said Howlett had formed and expressed an opinion; but he came in possession of such information only since his conviction."

Anthony Thornton states, "that before the jury in this case was empannelled, and during the examination of Alfred Howlett, on oath, touching his competency as a juror, said Howlett stated, on oath, as this affiant understood him, in answer to the general question in such cases, that he had not formed, and expressed an opinion as to the guilt or innocence of the defendant, and that no challenge for cause was made in consequence of such statement. This affiant further says, that, as one of the counsel of the defendant, he did not know, nor had he heard, till since the trial of this case, that said Howlett had expressed an opinion as to the guilt or innocence of the defendant, nor does he believe that the other counsel for the defendant had any knowledge of such expression of opinion, till since the trial." This is the substance of the affidavits presented on the part of the prisoner.

On behalf of the prosecution was read an affidavit of F. C. Thornton and thirteen others, stating, "that said Howlett has always borne the character of an honest man, and a man of strict truth and veracity, and that, from their knowledge of his character, they should place the most implicit confidence in his statements made under oath."

Alfred Doyle states, that "said Robert Sellers stated in his presence, on the evening of the 26th inst., that Alfred Howlett, one

of the jurors who sat on the trial, had expressed to him, Sellers, before the trial came on, his opinion as to his, Sellers' case, that he ought not to be hung, and, if he was on the jury, he should not be hung."

James Cutter states, that " since the making of an affidavit by Robert Sellers, who stands indicted in said Court for the crime of murder, (which said affidavit states that he, Sellers, had no knowledge, directly or indirectly, that Alfred Howlett, one of the jurors in the above case, had expressed or formed any opinion, either for or against him, in relation to his guilt or innocence, under the indictment,) said Sellers has stated to him, that he wished to get the affidavit back, that he did not wish it to go before the Court; that Mr. Howlett had made statements to him through the window, before he was empannelled upon said jury, as to what his opinion was."

The foregoing affidavits contain all the facts upon which the motion for a new trial was predicated, and present the following questions for the determination of this Court:

First, whether Howlett was a competent juror ; and, secondly, if incompetent, whether that incompetency, under the peculiar circumstances of this case, entitles the prisoner to a new trial.    In the case of Smith *v.* Eames, (1) decided at the July term, 1841, this Court says, that a juror is disqualified, if he has expressed a decided opinion upon the merits of the case.    If, without any qualification whatever, a juror says the defendant is guilty, or the like, or that the plaintiff ought to recover in the action, or that the verdict ought to be against the plaintiff, he would be disqualified, as not standing impartial between the parties.    In Vermilyea's case, the Supreme Court of New York says, it is admitted that every citizen, whether arraigned for crime, or impleaded in a civil action, is entitled to a trial by an impartial jury.    The trial by jury is justly considered an invaluable privilege; but it would become a mockery, if persons who had prejudged the case, were admitted as impartial triers.    All the elementary writers, with the exception of Chitty, lay down the proposition broadly, that, if a juror has declared his opinion before hand, it is a good cause of challenge.    In support of this position, Mr. Justice Woodworth cites 1 Arch. 181–2 ; 2 Tidd 779–80; Bacon, title Juries ; Bull. N. P. 307 ; Hale's P. C. 138.

Lord Coke (2) says, he ought to be least suspicious, that is to be indifferent, as he stands unsworn, and then he is accorded in law, *liber et legalis homo* ; otherwise, he may be challenged, and not suffered to be sworn.

What is meant by a person standing indifferent ?    Manifestly, that the mind is in a state of neutrality, as respect the person, and the matter to be tried ; that there exists no bias, either for or against,

(1) *Ante* 76.                    (2) Coke on Litt. 1556.

in the mind of the juror, calculated to operate upon him; that he comes to the trial with a mind uncommitted, and prepared to weigh the evidence in impartial scales. (1)

Applying these principles to the case under consideration, there can be no question of Howlett's utter incompetency as a juror. It appears from the affidavits, which, for the purposes of this motion, must be taken as true, that a short time previous to the trial, and on different occasions, he expressed a decided and unqualified opinion that the prisoner would be hung; that he ought to be hung; that nothing could save him; that salt could not save him; and that there was no law to clear him. It would be difficult for any one, in the fullness and freshness of our language, to select, or invent forms of expression, which would more clearly and emphatically convey a firm conviction of guilt, and, at the same time, preclude all hope, or possibility of escape, on the part of the prisoner. They furnish a strong case, and bring it fully within the authorities cited, and hence establish the incompetency of the juror.

But it is said, that, at the time of the trial, the prisoner knew that Howlett had formed and expressed an opinion, as to his guilt or innocence, and, having accepted him on the jury, with a full knowledge of the facts, he is estopped from denying his competency.

The only evidence in support of this assumption, is contained in the affidavit of Alfred Doyle, who heard the prisoner say that Howlett told him, before the trial, that he ought not to be hung, and, if he (Howlett) was on the jury, he should not be hung; and also, the affidavit of James Cutter, who heard the prisoner say, that Howlett had made statements to him, through the window, before he was empannelled upon the jury, as to what his opinion was. On the contrary, the record contains the affidavit of the prisoner himself, who denies all knowledge of Howlett's opinion, or of the fact that he had formed one, until he was sworn upon the jury; and also, the affidavit of Anthony Thornton, the prisoner's counsel, who denies all knowledge of the fact, on his part, and states, that Howlett, when examined, touching his competency as a juror, testified that he had formed and expressed no opinion upon the subject. We would prefer reconciling these affidavits, so as to give full faith and credit to each, if it were possible so to do; but they will not admit of such a construction. Two witnesses swear that the prisoner told them that he knew Howlett had formed and expressed an opinion; and he denies that he was in possession of any such information. Of course, we must credit the two disinterested witnesses, in preference to the prisoner. The case, then, stands thus: two or three weeks previous to the trial, the juror expressed the opinion, that the prisoner would, and ought to be hanged. Subsequently, he went to the jail, and told the prisoner, that he ought not to be hung, and, if he were on the jury, he should not be

(1) 7 Cowen 121-2.

hung.    Afterwards, when sworn on the trial, touching his compe-
tency as a juror, he stated that he had formed and expressed no
opinion.    The prisoner, supposing that his opinion was in his
favor, according to his statement at the jail, or that he was impartial,
according to his oath in Court, consented that he should serve on
the jury.    He did serve, and find a verdict against the prisoner, in
conformity to his previous statements, that he would and ought to
be hanged.    If this be the true state of the case, can it be said that
that juror was impartial ? that he possessed that moral perception,
that sense of justice, that integrity of character, which would qualify
him to pass upon the life of a fellow citizen ?    It presents the re-
volting spectacle of deep-seated malice, concealed under the sacred
garb of friendship, destroying its victim by adding treachery to per-
jury.    It is wholly immaterial, for the purposes of this motion,
whether the prisoner be guilty or innocent ; law, justice, humanity,
forbid that he should be deprived of his life by such means, and by
a jury thus constituted.

It has always been held that, if a juror prejudge the case, and it
is unknown to the failing party, it is ground for challenge, as in the
case of Dent *v.* The Hundred of Hertford. (1) A new trial was
granted, upon affidavit, that the foreman had declared the plaintiff
should never have a verdict, whatever witnesses be produced.

It is clear, upon authority, that, if the prisoner had not known
the fact, that the juror had formed and,expressed an opinion, he
would be entitled to a new trial.    Does not the oath of the juror,
made in the presence of the prisoner, that he had no opinion upon
the subject, bring this case substantially within this rule ?    Upon
a full view of the facts in the case, as presented in the record, and
of the law applicable to those facts, we. are of opinion, that Alfred
Howlett was an incompetent juror, and that the prisoner is entitled
to a new trial.    In conclusion, we feel it due to the juror, upon
whose conduct it has been our duty to animadvert, to say, that
there are some things appearing in the record, which would autho-
rize a hope that his conduct was susceptible of such explanation as
would acquit him of the injurious imputations which the facts set
forth in the bill of exceptions attach to him.

The judgment of the Circuit Court is reversed, and a new trial
awarded.

*Judgment reversed.*

(1) Graham on New Trials 127.