## BRYAN v. SOUTHERN RAILWAY CO.

(Filed May 30, 1901.)

1. NEGLIGENCE—*Master and Servant—Railroads—Personal Injuries—Evidence—Sufficiency.*

>  The evidence in this case is not sufficient to be submitted to jury on the question of negligence.

2. NEGLIGENCE—*Master and Servant—Railroads—Personal Injuries—Assumption of Risk.*

>  An employee of a railroad injured while loading timber on a car by a piece of timber falling on him, assumed the risk and is not entitled to recover therefor.

CLARK, J., dissenting.

ACTION by W. D. Bryan against the Southern Railway Company, heard by Judge *E. W. Timberlake* and a jury, at March Term, 1901, of the Superior Court of CATAWBA County. From a judgment for the plaintiff, the defendant appealed.

> *Self & Whitener,* and *T. M. Hufham,* for the plaintiff.
> *Geo. F. Bason,* for the defendant.

FURCHES, C. J. Action for damages. The plaintiff belonged to what he called a floating squad or gang of hands on the defendant's road. It seems that there were five of them belonging to this "gang," and one Whitley is designated by the plaintiff as "boss" of the gang. At the time of the injury complained of, this squad, consisting of said Whitley, the plaintiff and three others, were engaged in loading a car of a construction train with the timbers of an old bridge at Third Creek. Among this timber was an old sill or stringer, eight inches thick, sixteen inches wide and thirty feet long; and in

attempting to put this piece of timber on the car the plaintiff was injured.

The plaintiff's account of the matter (and it is his testimony that is relied on to make out the case) is substantially as follows: That after having loaded other timbers, such as cross-ties, Whitley told them to put this heavy piece on the car; that they rolled it up the bank near the car and lifted one end on the car; that one of the men (Sigman) put a piece of scantling on the car under the sill and the other end of the scantling on his shoulder, to hold that end of the sill on the car, until the other end could be raised up and put on the car; but by some means, while they were attempting to raise the other end, Sigman's scantling slipped, the end of the sill on the car slipped off and fell upon plaintiff and injured him.

It is contended on behalf of plaintiff that Whitley was "boss" of the squad; that he ordered the hands under him to put this sill on the car; that it was too heavy to be handled with the force he had; that he should have known this, and it was negligence in him to order them to put it on the car, for which negligence the defendant company is liable.

The plaintiff also contends that at the time the injury occurred, Whitley was on the car, when he should have been on the ground helping to raise the sill, and in this he was guilty of negligence, for which the defendant company is liable.

It is also contended on the part of the plaintiff that he was unacquainted with such work; relied upon the judgment of Whitley, and for that reason was not guilty of contributory negligence; and that the Court properly instructed the jury that he was not.

In answer, as we think, to some of these positions, we quote from the plaintiff's testimony as follows:

Questions, by plaintiff: "Describe exactly and correctly how it was that this thing happened? Answer. "In raising

the timber, Mr. Sigman, whenever he raised one end, would put the scantling under it for us to raise the other end. The other men lifted this end up, got away from it and fell back. I was the third man from the end. There were two men between me and the end of the timber."

Question. "How did you come to be working for the road?" Answer. "I hired to Mr. Whitley."

Question. "What position did he hold?" Answer. "He was boss of the floating gang of the Southern road."

Question. "Who had charge of the force that day?" Answer. "Mr. Whitley."

On cross-examination: Question. "You started to do it with the crowd you had; you saw the size of it, and you and four other men tried to put that piece of timber on the car?" Answer. "Yes, sir."

Question. "You thought you could put the timber up?" Answer. "Yes, sir; I went to work at it because Mr. Whitley told me to."

Question. "Didn't you think you could do it too; don't put it all on Mr. Whitley because he is not here; didn't you think you could do it?" Answer. "Yes, sir; I thought we could put it up."

Question. "What has been your means for making your living?" Answer. "Carpenter work."

Question. "What wages were you able to command before receiving this injury? Answer. "$1.75 to $2.25 a day."

Question. "I understand you to say that you got $1.75 to $2.25 a day?" Answer. "I have got it, but not with that force."

Question. "What were you getting on that force?" Answer. "One dollar a day."

The defendant is not liable for the negligence of Whitley as an *alter ego* if he was guilty of negligence, as there is no eidence that he had a right to discharge the plaintiff. *Dob-*

*bin v. Railroad,* 81 N. C., 446; *Kirk v. Railroad,* 94 N. C., 625; *Mason v. Railroad,* 111 N. C., 482. If there was negligence in one, it seems to us there was negligence in all the gang and not in the defendant road. There is no evidence going to show but what five men were as many as were needed to do the ordinary work this gang had to do. If this piece of timber was too heavy to be handled by them, there is no evidence that the defendant knew it, or ought to have known it; nor did the defendant know that they would undertake to put it on the car. Besides, it was no piece of machinery, about which the plaintiff was not as good a judge as Whitley, or anyone else in the "gang." The plaintiff admits in his evidence that he *thought they could put it on the car.* And it seems they would have done so but for the fact that Sigman's scantling slipped, and the piece of timber they were trying to load fell.

We see no negligence in the matter, but, from plaintiff's evidence, regard it as one of those unfortunate *accidents* that happen, and will continue to happen, in the performance of any heavy work, and the plaintiff assumed the risk. And we are of the opinion that defendant's motion to dismiss, under the statute, should have been allowed, and there was error in refusing the same.

Error.


DOUGLAS, J., concurring. I concur in the opinion of the Court. Pure accidents can not be eliminated by law. All that the law has done is to say that the employer shall exercise reasonable care to prevent accidents, and the courts can hold him responsible only when he fails to exercise such care. The employer is not responsible for an accident simply because it happens, but only when he has contributed to it by some act or omission of duty. I see no evidence tending to prove that the force of hands called the "floating squad" was not suffi-

cient for the ordinary work that it was expected to do. To my mind, it makes no difference whether Whitley was a vice-principal or not, as I can not say that he was directly respon- sible for the accident. Four men were told to load a piece of timber which they thought they could lift, and which it seems, they did lift, but in some way let slip back. This was the sole cause of the injury. If the beam had been thrown back by some movement of the train over which these four men had no control, the case would have been essentially different; but no other act of negligence, if there was any negligence at all, seems to have intervened between the lifting of the beam from the ground and the occurrence of the injury. The plaintiff was a carpenter, and must have known something by ex- perience of the weight of timber and of his capacity to handle it. It is true he expressed some doubt, but this doubt was not sufficient to deter him from attempting it or to cause any earnest protest on his part.

In the entire transaction I see only one of those unfortu- nate accidents, which, however much we may deplore, we are unable to remedy.

CLARK, J., dissenting. The defendant, at the close of the plaintiff's evidence asked that he be nonsuited, and excepted to its refusal. The Judge thought there was sufficient evidence to submit the issue to the jury, and the jury thought the evidence justified a verdict, which they rendered for the plaintiff. For the purpose of the motion, the evidence must be taken as true and in the most favorable light for the plaintiff. *Brinkley v. Railroad,* 126 N. C., 91; *Powell v. Railroad,* 125 N. C., 370.

The plaintiff was hired by one Whitley on a force called the "floating gang" on defendant's road, over which he was "boss." He was the superior of plaintiff, whose orders plain- tiff was bound to obey.

At the time of the injury, the plaintiff and four others

were engaged under Whitley's control and supervision in loading timber on a gondola car at Third Creek.    After loading some lighter material, such as cross-ties and the like, Whitley ordered them to move and place on the car a piece of heavy timber eight inches thick, sixteen inches wide and thirty feet long.    The plaintiff had not been accustomed to handle such timber.    He says he doubted if the force at hand could put it on the car, but supposed that device or management would be used, or that more men would be called in. In fact, Whitley used only four of the five men in the squad, and at a critical moment, when extra force should have been used, the fifth man does not seem to have been called to aid, though he was on the car, and Whitley himself rendered no help.    The timber was rolled up to the car.    When one end of the timber had been placed on the car, one man with his hand-spike was left to hold it, and as the other end was moved round and being lifted up, by its great weight it became uncontrollable, slipped down, and falling upon plaintiff, injured him in the manner complained of.

The defendant was bound to furnish a sufficient force to load the timber on the car, a duty which it failed to perform. Whitley, seeing that the timber was so heavy that it had to be rolled up to the car, if not negligent, would either have gotten more hands or at least should have called in the fifth hand, and have aided himself.    But instead of that, he took the chances (or rather let plaintiff and three others take it), and gave orders to lift the timber.    He ordered them into danger, but did not share it himself.    He attempted to use four men, when himself and another were present and might have prevented the accident.    The plaintiff testified that it occurred because the timber was too large for the four men to control it.    Whitley does not contradict this, and no other witness. This was gross negligence.    The plaintiff says he was not used to handling such timber, but thought it was so large that

other help would be given or advantage used. He was justified in so thinking, as Whitley and the other hand were there, and could have been used either directly or for the "advantage" which the plaintiff thought might lay in the power of Whitley to apply more mechanical device. It was "an accident" of course, as injuries from negligence always are, because it was unintentional; but it was an accident which, according to above evidence, would not have happened if Whitley, who, by defendant's orders, was in charge of the gang, had used the six men he had, instead of putting only four on the work.

Under the Fellow Servant Act (1897, Private Laws, Ch. 58), if the plaintiff was injured by the negligence of Whitley, though he were merely a fellow servant, the plaintiff could recover. It is immaterial, therefore, on the issue as to defendant's negligence, whether Whitley had the power to discharge the plaintiff or not.

There is not the scintilla of any evidence shown or claimed as to contributory negligence by plaintiff, unless it be that he did not rely on his own judgment as to the timber instead of obeying the orders of Whitley, under whose orders the defendant placed him to work. If that was not contributory negligence, there was nothing to justify the submission of that issue to the jury, and there was no prejudice in refusing to submit it. It is only in that aspect that it is material that Whitley was the vice-principal, giving orders for and in behalf of the company. His having the further power to discharge could only have been material to determine whether he was a fellow servant or not, prior to the Fellow Servant Act. It is immaterial here. The plaintiff testified that five men rolled the log to the car; that he and three others tried to put the log up; that the fifth man was somewhere on the car, but it does not appear where, and Whitley did not help. Then he says if Sigman had "held on to his scantling and

had a man or so, we could have gotten it up." This, two men being present and idle, was evidence of negligence (though Whitley was no more than a fellow servant) sufficient to go to the jury, and as above shown there was no evidence of contributory negligence.

In *Hinshaw v. Railroad,* 118 N. C., 1047, the plaintiff recovered for damages sustained in obeying instructions of a conductor because he was there to give instructions, though he had no power over Hinshaw. Here, the plaintiff was injured by obeying instructions of his "boss," who was there for that purpose, and it is equally immaterial whether the "boss" could discharge him or not. It was not contributory negligence to obey such instructions.

The order was not plainly dangerous to the plaintiff, and if he had not obeyed it, he would doubtless have lost his job. He was justified in trusting to the judgment and care of defendant's agent that he would not be subjected to unnecessary risk, and that he was so subjected the jury find was due to that agent's negligence. A hand, under such circumstances, when danger is not patent, is not called upon to dispute the orders of his superior and be put in the attitude either of assuming all responsibility for injury or losing his means of livelihood. The duty of care is upon the employer, who should have prudent and well-informed supervisors of their work, and if, in a case of this kind, the accident is caused by the carelessness or ignorance of the agent, who orders four men to lift a stick of timber and put it on a car, which rolls back and upon them because (as plaintiff testified) four men were insufficient to do the work, the fault is the miscalculation of the defendant's agent, and not in the miscalculation of the employee, who is not to be held to be wiser, at his peril, than the employer's agent and therefore guilty of the injury, because he did not at once throw up his employment.

Those who are in receipt of independent incomes are not

always advertent to the compelling power of that necessity which makes other men work from sun to sun for a bare pittance. Often, such men have wives and little ones dependent upon them. For a laborer to throw up employment, because in his estimate a stick of timber is too heavy for four men, when the "boss" thinks it is not, would not only subject him to the probability of immediate lack of food and shelter, but if such a critical characteristic became known, it might render it difficult for him to get other similar employment. A laborer can not always afford such independence, even if he should possess the capacity to judge of the method of doing the work better than the employer's agent. He is not to be put to such election—certainly not, unless the danger was more palpable and certain than in this case. Even Shylock had the justice to observe (when it touched himself), "You do take my life, when you do take the means by which I do live." A day laborer can not afford to give up his work upon which he subsists, because he fears, or by calculation might know, that a too heavy burden is assigned to the squad in which he is working. The care of calculation is upon the employer, and the responsibility for the miscalculation and injury lies there.

There was no error in not submitting the second issue as to contributory negligence. If the response to the first issue had been that the defendant was not negligent, the case would have ended; and, upon the circumstances in this case, the contributory negligence of the plaintiff, if any, was necessarily considered in the inquiry whether the defendant was negligent. The sole inquiry was whether the proximate cause was the negligence of defendant or not. *Short v. Gill,* 126 N. C., 807. Besides, if there had been a second issue, the Court would have had to tell the jury there was no contributory negligence shown. *Haltom v. Railroad,* 127 N. C., 255.