## PANHANDLE & S. F. RY. CO. v. BROOKS.
### (No. 1259.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 5, 1917. Rehearing Denied Dec. 19, 1917.)

**1. MASTER AND SERVANT ⟐270(18)—INJURIES TO SERVANT — NEGLIGENCE OF FOREMAN—EVIDENCE.**

In determining whether the act of a railway's foreman in directing four men to do certain work was negligent, the fact that he knew, or should have known, in the exercise of ordinary care, that the force of men was insufficient, was material.

**2. COMMERCE ⟐8(6) — FEDERAL EMPLOYERS' LIABILITY ACT—INTENTION OF CONGRESS—LIABILITY OF RAILROAD.**

It was the intention of Congress, by its legislation on the liability of railroads for injuries to their employés engaged in interstate commerce, to take entire and exclusive control over the subject in order to make the liability in such cases uniform throughout the United States, and, as in the case of liability of the initial carrier in an interstate shipment, the liability is to be determined by the provisions of the legislation itself and the general common law as administered by the federal courts, unaffected by state legislation and decisions of the state courts, except as they may announce the common law.

**3. MASTER AND SERVANT ⟐252 — FEDERAL EMPLOYERS' LIABILITY ACT—REQUIREMENT THAT SERVANT GIVE NOTICE OF INJURIES.**

Under federal Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. 1916, § 8657) § 1, providing that every common carrier, by railroad, while engaged in commerce between any of the several states, shall be liable in damages to any person suffering injury while employed by such carrier in such commerce, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, and section 5 (section 8661) providing that any contract, rule, regulation, or device, whatsoever, to enable any common carrier to exempt itself from any liability created by the act, shall be void to that extent, the written contract of employment between a railroad and its employé, in so far as it provided that the road should not be liable for injuries unless the employé gave notice in writing of his claim, was void.

**4. MASTER AND SERVANT ⟐286(29) — INJURIES TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.**

In a railroad servant's action for injuries while handling timber with others, whether the railroad was negligent in the means and method employed in transferring the timber from one car to another *held* for the jury.

**5. APPEAL AND ERROR ⟐216(2) — RESERVATION OF GROUNDS OF REVIEW—REQUEST FOR INSTRUCTION.**

Where, if there was any error in a charge, it was one of omission, appellant, before it could complain, should have requested a special instruction to be submitted in connection with the charge.

**6. TRIAL ⟐243—INSTRUCTIONS—INCONSISTENCY.**

In a railroad servant's action for injuries, where the court, in submitting defendant's affirmative liability, in the fourth paragraph of the charge stated the several grounds of negligence relied on by plaintiff to support a recovery conjunctively, so that a finding in plaintiff's favor on all of them was necessary before he could recover, but in the submission of the issue of concurrent negligence of plaintiff and defendant the jury was instructed to apply the doctrine of comparative negligence if they found any negligence of defendant as submitted for their determination in the fourth paragraph, the charge was inconsistent.

**7. APPEAL AND ERROR ⟐1033(5)—HARMLESS ERROR—INCONSISTENCY IN CHARGE.**

Such inconsistency was not calculated to injure defendant railroad; the error being against plaintiff servant, if any one.

**8. MASTER AND SERVANT ⟐204(1)—FEDERAL EMPLOYERS' LIABILITY ACT — ASSUMED RISK.**

In a railroad servant's action for injuries under the federal Employers' Liability Act, Congress having taken complete control of the subject of the liability of interstate carriers by rail to their servants for injuries, the statutory law of Texas has no application, and the question of assumed risk is to be determined by the provisions of the federal Employers' Liability Act itself, and the common law as recognized by the federal courts.

**9. MASTER AND SERVANT ⟐204(1)—FEDERAL EMPLOYERS' LIABILITY ACT — DEFENSE OF ASSUMED RISK.**

Federal Employers' Liability Act, § 4 (U. S. Comp. St. 1916, § 8660), providing that, in any action brought against any common carrier under any of the provisions of the act to recover damages for injuries to or the death of any of its employés, such employé shall not be held to have assumed the risk of his employment in any case where the violation of such common carrier of any statute enacted for the safety of employés contributed to the death or injury of such employé, leaves unimpaired the common-law defense of assumed risk except under the conditions stated.

**10. MASTER AND SERVANT ⟐203(1) — INJURIES TO SERVANT—ASSUMPTION OF RISK.**

An employé assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as they are not attributable to the employer's negligence; but the employé has the right to assume that his employer exercised proper care with respect to providing a safe place of work, and suitable and safe appliances, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence until the employé becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it.

**11. MASTER AND SERVANT ⟐288(1) — INJURIES TO SERVANT — ASSUMPTION OF RISK — QUESTION FOR JURY.**

In a railroad servant's action for injuries while handling timber, question whether plaintiff assumed the risk of injury arising from the insufficient number of his fellow workers *held* for the jury under the evidence.

**12. MASTER AND SERVANT ⟐295(1) — INJURIES TO SERVANT—ASSUMPTION OF RISK.**

In a railroad servant's action for injuries while handling timber, special charges that, if plaintiff by the exercise of ordinary care could have known of the danger or the insufficiency of the number of men to perform the work, he assumed the risk under the circumstances, were incorrect as imposing a greater burden on plaintiff than the law required.

**13. DAMAGES ⟐208(6)—PERSONAL INJURIES —MENTAL SUFFERING—DIRECT EVIDENCE.**

In a railroad servant's action for injuries under the federal Employers' Liability Act, the trial court properly submitted as an element of damage the pain of body and mind suffered by plaintiff, though no direct evidence of pain of mind was offered, since mental anguish is presumed to follow physical pain and injury from rupture or hernia by sudden physical strain such as plaintiff suffered.

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Suit by B. F. Brooks against the Panhandle & Santa Fé Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Madden, Trulove, Ryburn & Pipkin, of Amarillo, and Terry, Cavin & Mills, of Galveston, for appellant. L. C. Barrett and J. N. Browning, both of Amarillo, for appellee.

BOYCE, J. This suit was brought by appellee, Brooks, against the Panhandle & Santa Fé Railway Company, to recover damages for an injury alleged to have been sustained by appellee while in the employment of appellant and being engaged at the time of the alleged injury in moving some heavy bridge timber from one car to another. This appeal is from a judgment for the plaintiff, rendered on a general verdict of the jury in his favor.

It was alleged, and evidence offered in support of the allegations, that four men, including the plaintiff, working under the direction of a foreman, who assisted to some extent in the work, undertook to move from one flat car to another, across the end thereof, a bridge timber 12x12 inches square, and about 14 feet long, which was estimated to weigh about 700 or 800 pounds. Across the end of the car, and over which the timber was to be moved, was a drain box, the top of which was some 2½ feet above the floor of the car. Plank 3 by 12 inches were rested on this box to form skids over which to move the bridge timber. The bridge timber was lifted and placed on rollers, consisting of 3-inch iron pipe, and the timber rolled over the drain box. Two men, one of whom was the plaintiff, were engaged in pulling at the front end of the timber, and two others, assisted by the foreman, were pushing at the rear. When the center of gravity of the bridge timber passed over the drain box, the forward end of the timber dropped suddenly downward and forward, its weight jerking on plaintiff, who had hold of it with a lug hook, resulting in a hernia or rupture. The negligence alleged and submitted to the jury was: First, the order and attempt of the foreman to move said timber with a force of men insufficient to handle it with safety; and, second, the method employed by said foreman in moving the timber.

The defendant, in addition to the general denial, pleaded that the accident resulted from a risk ordinarily incident to the service of plaintiff, and therefore assumed by him, and further that the plaintiff knew, or should have known, of the danger incident to the handling of the timber under the circumstances and assumed the risk, and was also guilty of contributory negligence in such matter. The defendant further pleaded certain provisions of the contract of employment with plaintiff, which we will set out more fully later.

It was alleged and shown by plaintiff, and acquiesced in by defendant, that the plaintiff was injured while employed by defendant in interstate commerce, so that the liability of the defendant is based upon the federal Employers' Liability Act.

[1] The first three assignments of error complain of the action of the court in overruling defendant's objection to the pleading and proof that one of the three coworkmen with plaintiff at the time of the direction of the foreman, to the four men, to move this timber, insisted that it was too heavy for four men to move, and that others should be called to help. If such evidence has any relevancy, it would be only as tending to charge the defendant with notice of the fact that the number of men employed to do this particular piece of work was insufficient. However, in determining whether the act of the foreman in directing four men to do this work was negligent, the fact that he knew, or should in the exercise of ordinary care have known, that the force of men was insufficient, would be material, and we believe the testimony of the character complained of would be admissible on this issue.

The defendant specially pleaded: That the plaintiff, at the time he entered the service of the defendant, entered into a written contract of employment, by the terms of which he agreed that in the event he should sustain any personal injury while in the service of the defendant, for which he should make claim for damage, he would, within 30 days after receiving such injury, give notice in writing of such claim to the claim attorney or general claim agent of the defendant, which notice should state the particulars of the injury and the amount of the claim therefor, and that failure to give such written notice within the manner and time aforesaid should be a bar to the institution of any suit on account of such injury. That said provisions in said contract were reasonable, and that the plaintiff had not complied therewith, and had not given the notice as therein stipulated, and that therefore such contract and plaintiff's failure to comply therewith constituted a bar to plaintiff's right to recover. The court sustained an exception to this portion of the answer, and appellant assigns error on such action.

[2] If the statutes of our state were applicable to this subject, we would not have to look further than to the provisions of article 5714 of such statutes for a decision of this question. But it is definitely settled by the decisions of the Supreme Court of the United States that it was the intention of the Congress, by its legislation on the liability of railroads for injury to employés while engaged in interstate commerce, to take entire and exclusive control over this subject, with a view to making the liability in such cases

uniform throughout the United States. N. Y. C. Ry. Co. v. Winfield, 244 U. S. 147, 37 Sup. Ct. 546, 61 L. Ed. 1045, Ann. Cas. 1917D, 1139. And as in the case of liability of the initial carrier in interstate shipments, this liability is to be determined by the provisions of the legislation itself and the general common law, as administered by the federal courts (Seaboard Air Line v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; M., K. & T. Ry. Co. v. Harriman Bros., 227 U. S. 672, 33 Sup. Ct. 397, 57 L. Ed. 698), unaffected by state legislation and decisions of state courts, except as they may announce the common law. So that, in our search for authoritative law on this subject, we will be confined to the field indicated. While we have been cited to no authorities so holding, we think it may be assumed that, in the absence of legislative prohibition, the contract in question would have been valid at common law on the same principle that contracts for notice or claim for damages in shipping and telegraph cases have been upheld. So that the question for decision is whether such a contract is condemned by the spirit or express terms of the federal act creating the liability. The provisions of the act which we believe should be decisive of this question are as follows: Section 1 of the act, section 8657, U. S. Statutes compiled by West Publishing Co., provides that:

"Every common carrier by railroad while engaged in commerce between any of the several states, etc., * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, etc."

Section 5 of the act, section 8661, Compiled Statutes above referred to, has this provision:

"Any contract, rule, regulation, or device, whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act, shall to that extent be void."

It is suggested by appellant that there is an analogy between this contract in this case and similar stipulations in contracts of shipment under the Interstate Commerce Act, which have been repeatedly upheld by the Supreme Court of the United States. An analysis will show, however, that the analogy is not complete. By the terms of the act regulating interstate shipments it was provided:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state, shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered, or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier,

railroad, or transportation company for the liability hereby imposed." Act Cong. June 29, 1906, c. 3591, § 7, 34 Stat. 595.

The liability imposed by this act, however, was not absolute. Adams Express Co. v. Croniger, 226 U. S. 505, 33 Sup. Ct. 148, 57 L. Ed. 320, 44 L. R. A. (N. S.) 257; M., K. & T. Ry. Co. v. Harriman Bros., 227 U. S. 672, 33 Sup. Ct. 397, 57 L. Ed. 698. The liability imposed was the common-law liability, which was itself a proper subject of contract within certain limits. So that in such case the liability was itself to be ascertained and determined by any contract that might lawfully at common law be entered into with reference to the shipment. The Employers' Liability Act, however, imposes an absolute liability for injuries resulting from negligence. The question of negligence was, of course, to be determined by the principles of common law; but, when that was ascertained, the liability was fixed by the act, which went further and expressly declared that any contract, the purpose and intent of which was to exempt the carrier from liability created thereby, should be void.

The first Employers' Liability Act of 1906 (Act Cong. June 11, 1906, c. 3073, 34 Stat. 232), which was held unconstitutional, except as to its application to the District of Columbia and the territories, had provided by section 3 of the act that:

"No contract of employment * * * entered into by or on behalf of any employé * * * shall constitute any bar or defense to any action brought to recover damages for personal injuries to or death of such employé."

The court, in the case of Philadelphia, B. & W. R. R. Co. v. Schubert, 224 U. S. 603, 32 Sup. Ct. 589, 56 L. Ed. 911, in discussing the meaning and application of the present act, and after referring to section 3 of the old act, as above quoted, says:

"But it is urged that the substituted provision (of section 5 of the act of 1908 [U. S. Comp. St. 1916, § 8661]) failed to embrace that which the earlier act specifically described. We cannot assent to this view. The evident purpose of Congress was to enlarge the scope of the section, and to make it more comprehensive by a generic, rather than a specific, description. It thus brings within its purview, 'any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act.' It includes every variety of agreement or arrangement of this nature; and stipulations, contained in contracts of membership in relief departments, that the acceptance of benefits thereunder shall bar recovery, are within its terms. The statute provides that 'every common carrier by railroad in * * * the District of Columbia * * * shall be liable in damages to any person suffering injury while he is employed by such carrier * * * resulting in whole or in part from negligence of any of the officers, agents, or employers, of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.' That is the liability which the act defines and which this action is brought to enforce. It is to defeat that liability for the damages sustained by Schubert, which otherwise

the company would be bound under the statute to pay, that it relies upon his contract of membership in the relief fund, and upon the regulation which was a part of it. But for the stipulation in that contract, the company must pay; and, if the stipulation be upheld, the company is discharged from liability. The conclusion cannot be escaped that such an agreement is one for immunity in the described event, and as such falls under the condemnation of the statute. * * * The words, 'the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act,' do not refer simply to an actual intent of the parties to circumvent the statute. The 'purpose or intent' of the contracts and regulations, within the meaning of the section, is to be found in their necessary operation and effect in defeating the liability which the statute was designed to enforce. Only by such general application could the statute accomplish the object which it is plain that Congress had in view."

In the case of M., K. & T. Ry. Co. of Texas v. Hudgins, 60 Tex. Civ. App. 344, 127 S. W. 1183, the Court of Civil Appeals of this state for the Sixth District had such a contract under consideration, in a suit for damages under our own Railway Employer's Liability Act, which provided, among other things, that:

"No contract made between the employer and employé, based upon the contingency of death or injury of the employé, and limiting the liability of the employer under this act, or fixing damages to be recovered, shall be valid or binding." Acts 25th Leg. (1st Sp. Sess.) c. 6, § 4.

And in discussing the validity of such a contract as determined by the said provision of our statute the court said:

"By the terms of section 1 of the act, a liability of appellant, as an employer operating a railroad, was to pay appellee, its employé, all damages sustained by him while engaged in the work of operating a locomotive by reason of the negligence of any other of its employés, without respect to whether such other employé was a fellow servant with appellee or not. Appellee's suit was to enforce this liability on the part of appellant. The portion of the answer excepted to set up as a bar to his right to enforce it the failure on his part to comply with the stipulation in the contract set out in the answer. In creating a liability on the part of appellant to appellee for an injury received by him as the result of negligence on the part of his fellow servant, the statute at the same time created, as against appellant, and in favor of appellee, a right to enforce that liability within the time and in the mode provided by the general laws of the state. The liability created was an absolute one against the employer, and the right bestowed was an absolute one in favor of the employé. But such would not be the effect of the statute if force should be given to the stipulation in the contract. We would have, instead of an absolute right and an absolute liability, a conditional right and a conditional liability. The employer would be liable if the notice was given. The employé would have the right if he gave the notice. It is obvious therefore that to give effect to the contract would be to limit or restrict the operation of the statute. That the limitation so effected would be upon the substantive rights of the parties seems to have been determined by the Supreme Court in C., R. I. & P. Ry. Co. v. Thompson, 100 Tex. 188, 97 S. W. 459, 7 L. R. A. (N. S.) 191, 123 Am. St. Rep. 798."

The Supreme Court of Arkansas, in the case of C., R. I. & P. Ry. Co. v. Pearce, 118 Ark. 6, 175 S. W. 1160, L. R. A. 1915F, 551, expressly held that a similar contract as applied to an employé of a railway company, injured while engaged in interstate commerce, was void.

[3] That part of the contract which provides for notice would perhaps be unobjectionable and in itself might be enforced if that could be done in any way other than by exempting the railway company from liability. But the agreement which makes its breach a complete bar to the cause of action would enable the railway company thereby in such case to exempt itself from liability, and such agreement must fall under the provisions of the act as construed by the Supreme Court in the case we have referred to.

[4] By the fifth assignment, appellant contends that the evidence was not sufficient to warrant the submission of an issue of negligence in the means and method employed by defendant in transferring said timber from one car to another. The only testimony on this subject was that descriptive of the method of transferring the timber as we have set it out in our preliminary statement and the testimony offered by the defendant that such timbers are usually handled by four men, and that offered by plaintiff that it would take six men at least to properly handle such a piece of timber, particularly if it were to be carried. It may be inferred from some of the testimony offered by the defendant that this was the usual method of transferring such timbers from one car to another, though this is not clear and is not a necessary inference from the evidence. There seems to have been only this piece of timber handled in this way on the day of the accident; the other timber on the car, however, having been unloaded onto the dock. If there is any hazard in this manner of handling timber above that incident to lifting it up and carrying it or handling it in some other way, it would result from the fact of the tendency of the timber resting on rollers with one end five or six feet higher than the other, to plunge suddenly forward and downward after the center of gravity had been passed over the drain box. This character of movement might be hard to control and dangerous, so that we are of the opinion that the question was properly one for the jury.

[5] Complaint is made, by the first proposition under the sixth assignment of error, of that portion of the charge that submits the issue of contributory negligence, because it does not specifically submit as an issue the alleged contributory negligence of plaintiff in attempting to move the timber with knowledge that an insufficient number of men were furnished. The charge does omit specific reference to this matter, but does direct the jury to diminish the damages "if you find any negligence of plaintiff as alleged in defendant's answer in proportion to the amount of negligence, if any, attributable to plaintiff." If

there was any error in the charge, it was of omission, and the appellant, before it could complain, should have requested a special instruction to be submitted in connection with this portion of the charge.

[6, 7] The court, in submitting the affirmative liability of the defendant, in the fourth paragraph of the charge, stated the several grounds of negligence relied on by plaintiff to support a recovery conjunctively, so that a finding in plaintiff's favor on all of them was necessary before he could recover; but, in the submission of the issue of concurrent negligence of plaintiff and defendant, the jury was instructed to apply the doctrine of comparative negligence, "if you find any negligence of defendant as submitted for your determination in the fourth paragraph of this charge, etc." By the second proposition under the sixth assignment, it is contended that the charge is, for this reason, inconsistent. This is true. However, we do not think that this was calculated to injure appellant; the error being against appellee, if any one.

[8] We will consider together, for the reason that they are all to be determined by the application of the law of assumed risk, the questions presented by the third proposition under the sixth assignment, and by the eighth, ninth, and tenth assignments. As one of the instructions requested by appellant upon which one of these assignments is based attempts to embody therein our statutory law on the subject of assumed risk, and appellant refers to the statute as authority in support of its assignment, we deem it proper to reiterate that, since Congress has by its legislation taken complete control of this subject, our own statutory law has no application, and the question of assumed risk is to be determined by the provisions of the act itself, and the common law, as recognized by the federal courts. Seaboard Air Line Ry. Co. v. Horton, 233 U. S. 499, 34 Sup. Ct. 635, 58 L. Ed. 1068, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475. Section 4 (section 8660, West's Compiled Statutes) of said liability act is as follows:

"In any action brought against any common carrier under or by virtue of any of the provisions of this act, to recover damages for injuries to, or the death of, any of its employés, such employé shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé."

[9] This provision of the act leaves unimpaired the common-law defense of assumed risk, except under the conditions stated. Seaboard Air Line Ry. Co. v. Horton, supra, and, since this case does not involve the violation of any federal enactment for the safety of employés, it is to be determined by the principles of the common law. The law of assumed risk, so far as it is necessary to a decision of this case, is fully discussed and stated in the following cases: Gila Valley

G. H. & N. Ry. Co. v. Hall, 232 U. S. 101, 34 Sup. Ct. 229, 58 L. Ed. 524; Seaboard Air Line Ry. Co. v. Horton, supra; C. O. & G. Ry. Co. v. McDade, 191 U. S. 68, 24 Sup. Ct. 24, 48 L. Ed. 100.

[10] The following statement of the law in the opinion of the court, in the case of Gila Valley Ry. Co. v. Hall, supra, is, we think, sufficient for a decision of all of the questions presented by these assignments:

"There was a request for instructions to the effect that the plaintiff assumed the risk of injury from defects which he knew, or by the exercise of ordinary care in the discharge of his duties might have known, or which he had the opportunity to know. These instructions the court refused to give, but charged the jury upon this question: 'The true test is not in the exercise of ordinary care to discover dangers, by the employé, but whether the defect is known or plainly observable by him. An employé is not charged by law with the assumption of a risk arising out of defective appliances provided by his employer, unless his employment was of such a nature as to bring to his attention and cause him to realize and comprehend the dangers incident to the use of such appliances.' This, we think, was a correct instruction under the circumstances of the case. An employé assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. But the employé has a right to assume that his employer has exercised proper care with respect to providing a safe place of work, and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employé becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employé with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear, not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person, under the circumstances, would have appreciated it."

[11] With this general statement of the law we will proceed to the consideration of the assignments of error on this subject. The third proposition under the sixth assignment is to the effect that:

"The court's charge is erroneous in submitting as an issue the furnishing of an insufficient number of men because the evidence conclusively shows that the plaintiff had the same knowledge as to the sufficiency or insufficiency of the number of men furnished at the time he undertook said work."

The objection to the court's charge was in practically the same language. It is clear that, if it be conceded that the statement of the effect of the evidence be correct, the legal result asserted does not necessarily follow on application of the principles announced in the quotation above; but, if the objection to the charge is sufficient to require us to consider whether under the evidence it conclusively appears that any danger incident to the handling of the timber with an insufficient force of men was assumed by plaintiff, we are nevertheless of the opinion that the assignment is not well taken. The

effect of plaintiff's testimony is that he thought at least six men would be necessary to handle the timber if it was to be carried, but he had not before seen timbers handled as this was and did not understand how it was to be handled; that he thought it was rather heavy, but if the foreman had a scheme to get it over the drain box he was relying on him; that he did not know of the danger of handling the timber in the manner it was handled in time to have prevented the injury, and did not anticipate that the weight would be thrown on him suddenly as the timber "shot downward," as he expressed it. The evidence suggests that a sufficient number of men at the rear could have balanced the timber and let it down gradually after the center of gravity passed over the drain box. It seems that the lug hook used by appellee was something in the nature of ice tongs, except that it had a long wooden handle, one end of which was held by appellee on one side of the timber and the other end by another man on the opposite side, and appellee testified that the timber suddenly dropped downward and forward, throwing its weight on him with a jerk before he had time to turn loose. We can understand how one who has not seen timbers handled in this way might not appreciate the danger or understand how many men would be required to control the timber as it was passed over the drain box. We therefore believe the question was one for the jury.

[12] Special charge No. 3, requested by appellant and made the basis of the eighth assignment, special charge No. 4, requested and refused, made the basis of the ninth assignment, and special charge No. 7, requested and refused, made the basis of the tenth assignment, were all properly refused for the reason that they did not correctly state the law as it is announced in the decisions of the Supreme Court of the United States to which we have referred. Special charges Nos. 3 and 4 proceed on the theory that if plaintiff, by the exercise of ordinary care, could have known of the danger, or could have known of the insufficiency of the number of men to perform the work, he would have thereby assumed the risk under the circumstances stated. As expressly stated by the court, in the case of C. O. & G. Ry. Co. v. McDade, 191 U. S. 68, 24 Sup. Ct. 24, 48 L. Ed. 100, such a statement of the law is not correct, and imposes a greater burden on the servant than the law required. Special charge No. 7 did not require a knowledge on the part of the plaintiff that the insufficient number of men used in handling the timber might be dangerous to him before he would be held to have assumed the risk. Special charge No. 4 would have been further erroneous in that it assumed that plaintiff knew that an insufficient number of men were furnished to handle the timber. This charge attempts to submit the defense of assumed risk as defined by article 6645 of our Revised Statutes. It is not necessary to determine whether it is correct under the statute, as it is evidently incorrect under the principles announced by the cases we have referred to. The charge of the court submits the question in substantially the manner approved by the court in the case of Gila Valley G. & N. R. Co. v. Hall, supra, and in connection with the general charge a special charge, No. 2, requested by appellant, was given which stated the law even more favorably to appellant than it was entitled.

[13] The court did not err in submitting as an element of damage the pain of body and mind suffered by the plaintiff. No direct evidence of pain of mind was offered, but mental anguish is presumed to follow physical pain and injury, such as plaintiff sustained. T. & P. Ry. Co. v. Curry, 64 Tex. 85; I. & G. N. Ry. Co. v. Mitchell, 60 S. W. 996; Brown, Receiver, v. Sullivan, 71 Tex. 470, 10 S. W. 288.

The evidence was not sufficient to raise an issue of negligence on the part of the plaintiff in the care and treatment of his injuries, and it was not necessary for the court to give the special charge No. 10, on this subject, requested by defendant.

Affirmed.