C., N. O. & T. P. RY. CO. v. W. R. STEELMAN.

Eastern Section. February 11, 1928.

Horace M. Carr and Edward Colston, of Harriman, for plaintiff in error.

W. Y. Boswell, of Oneida, for defendant in error.

HEISKELL, J. W. H. Steelman, defendant in error, who will be called the plaintiff, brought this suit in the circuit court of Morgan county, to recover damages for personal injuries, which he alleged he received on July 24, 1926, while lifting a motor car on the track after it had been lifted off, to let a freight train pass. He alleged that he was a member of a section crew, working for the Cincinnati, New Orleans & Texas Pacific Railway Company, plaintiff in error, which will be spoken of as the defendant, and that his crew had a motor car, which they used to convey the men and tools to and from their places of work; that on the day of his alleged injury, the crew put this car on the railroad track at Sunbright, a station on defendant's railroad, and started south to a place where they were to do a day's work, and after proceeding about half a mile, they discovered a freight train approaching from the north, and it became necessary for them to stop and remove their motor car from the track, so the train could pass; that the crew, consisting of seven men, lifted the car off the track and set it by the side of the road, and after the train passed, while they were lifting the car back on the track, he says he was thrown to the ground and alleges that he was seriously and permanently injured. He avers that the load he was carrying was so heavy, he could not lift his foot over the rail, therefore he was thrown to the ground, and something about the car caught him in the back, and injured him. The only ground of negligence alleged and relied upon, is contained in the following quotation from the declaration:

> "Plaintiff would respectfully show that said injury aforesaid was due to the negligent, careless, reckless and unlawful attempt by the defendant, to handle said heavy motor car with

an insufficient number of men; that the number on the job being used to handle it on the date and occasion aforesaid was wholly inadequate and insufficient to handle it with any degree of safety; that the number on that occasion was less than the usual number, commonly used to handle it on previous occasions, and that this insufficient number of men were wholly and totally unable to replace said car on said track aforesaid, without endangering those who were charged with the responsibility of handling said car.

"Plaintiff further insists that it was gross negligence on the part of the defendant railroad company, and calculated to result in just such an injury as did happen, to require an insufficient number of men to handle a heavy, dangerous instrument like a railroad motor car, and that this reckless, negligent, careless and unlawful handling of this car by defendant company was the prime and proximate cause of said injury."

The declaration did aver that the defendant was at fault in not providing some better and safer method in lifting the car on and off the track, but no notice of this averment was taken in the development of the case. No proof was offered on this allegation, but the case was based solely and alone upon the averment that plaintiff in error failed to furnish a sufficient number of men to handle the car safely. No suggestion was made in pleading or proof as to any better and safer method except to supply more men.

Defendant plead not guilty, and the trial, before Judge W. H. Buttram, and a jury, resulted in favor of plaintiff for $2,000. Defendant has appealed and assigned errors.

There is little dispute about the facts. For the most part the facts stated in the declaration are admitted. The crew was smaller that morning than usual. The day of the accident the crew consisted of a foreman and seven men. The plaintiff says ten or twelve men are required to lift the car on and off the track with safety. All the other witnesses who testify on the subject, eight in all, say that six men are enough to handle the car without danger. Steelman says the car weighed about 2500 pounds. The other men said it weighed about 700 or 800 pounds. No witness testified from actual knowledge of the weight. The plaintiff says there were seven men lifting the car when he was hurt—four at the front end, where the motor is located, which end is admitted to be about 200 pounds heavier than the rear end, and three at the other end, plaintiff and two others. Most, if not all of the other witnesses say there were six men lifting the car. Some of the witnesses say that five men can handle the car very well and that ten men would be in each other's way. The plaintiff says that he had been working with this section crew in which he was working at time of injury, for two months. Other witnesses say four months. He admits he had

worked on railroad sections about eight years, using cars to go to and from work, but had not used a motor car before.

Plaintiff admits that he knew when they left Sunbright that morning that there were only seven men beside the foreman in the crew and when the car was lifted off and on the tracks he knew there were only that number of men present.

The first assignment is that there is no evidence to support the verdict. The second is that the verdict is against the weight of the evidence, and third is that it was error to overrule defendant's motion for a directed verdict at the end of all the evidence. There is nothing in the second assignment. The first and third are passed for consideration in connection with later assignments.

The fourth assignment is because the court refused defendant's request number one, which is as follows:

"If the jury shall find that the plaintiff left Sunbright with his foreman and crew of seven men including himself, proceeding down the track on a motor car, to a point where it became necessary to remove the motor car from the track in order to let a freight train pass, and that he with the other men lifted said car off the track, and following the passing of the train, attempted to place it back on the track with the same number of men and plaintiff stumbled and fell, and was injured, he could not recover in this case on account of an insufficient number of men to handle the motor car, because if he knew the number of men were insufficient, and attempted to lift it back to the track without complaint, he in law assumed the risk of injury by so doing, and your verdict should be in favor of the defendant."

The fifth assignment is that the court committed error in refusing defendant's request number two which is as follows:

"If the jury should find that defendant did not furnish sufficient number of men to lift the car in question off and on the track in safety, and that plaintiff Steelman knew that there were not a sufficient number of men to handle the car in safety, yet he did undertake to replace this car on the track with the men furnished without complaint as to the number of men undertaking this service, he cannot recover, in this case, because he must be held to have assumed the risk of injury, and your verdict should be in favor of the defendant."

These assignments raise the same question and will be treated together. The only negligence on the part of the defendant charged in the declaration is a failure to furnish a sufficient number of men to handle the car with safety. These assignments insist that the judge should have told the jury that even if the number of men on the crew was not sufficient to handle the car and the plaintiff

knew it, then plaintiff could not recover because he had assumed the risk.

The contention of the plaintiff is that knowledge on the part of the plaintiff that the number of men was insufficient to handle the car is not knowledge that it was dangerous to do so. That the danger was not obvious or apparent to him, consequently there was no assumption of the risk. It is apparent then that the question here presented is whether or not the trial court should have held that the knowledge of plaintiff that the crew was insufficient made the danger so apparent and obvious as to justify the holding as a matter of law, that plaintiff assumed the risk.

The first authority cited to support the contention of defendant is Heath v. R. R., 286 S. W., 148, from the Supreme Court of Missouri. The facts of that case are very similar to the present case and the court said:

"We are of the opinion that under the Federal rule here applicable, where a railroad section employee had had over three years' experience in working on a section, and his duties, during all that time, required him to assist in unloading and loading a heavy motor car off and on the railroad track at least twice each day, he may be presumed to know the number of men necessary to lift such motor car with reasonable safety, and if he performs such work with a less number of co-employees than is thus reasonably required, without complaint, he assumes the risk of danger and injury to himself by reason thereof under the Federal rule, as a matter of law, and plaintiff cannot recover.

"It is further to be observed, in this case, that plaintiff attributed his injury to the slipping of his foot, and not to the failure of his co-employees, including the man with the crippled hand, to do their share of the work. While the weight of the car may have caused his foot to slip, it cannot be assumed that if there had been more men assisting in the work his foot would not have slipped. Hamilton v. St. Louis-San Francisco R. Co. (Mo. App.), 279 S. W. R., 177.

"We are unable to discover any theory, on which this case should have been submitted to the jury. There is no room for any doubt on the question of plaintiff's knowledge and the demurrer to the evidence should have been sustained.

"Under the Federal Employers' Liability Act, an employee entering upon a contract of employment assumes all the risks and dangers ordinarily incident to the employment, and also risks caused by the employers negligence which are obvious and known to the employee and that he must be presumed to know. But the employee is not, under the Act, required to use even ordinary care in discovering dangerous defects, and knowl-

'edge will not be imputed unless the defects are plainly observable. Citing Seaboard Air Line Ry. v. Horton, 233 U. S., 34 (58 L. Ed. 1062), L. R. A., 1915C, 1; McIntyre v. St. Louis & S. F. R. Co., 286 Mo. 234."

Tosh v. Illinois Central R. R. Co., 204 Ky., 363, is also relied on by defendant. The first and second head notes are:

"Master and Servant. Risk of lifting rail without sufficient help assumed. A section hand lifting rail without sufficient help, and injuring muscles of back and hips held to have assumed risk, even though he did not know of the danger.

"Master and Servant. Simple Tool Rule applied to lifting rail: A section hand assisting in lifting a T-rail was bound to take notice of length and weight of rail and cannot say that he did not know rail was so long and heavy. T-rail being embraced in class governed by Simple Tool Rule, requiring an employee to notice danger, if there is any, in handling such tool."

It is insisted for defendant that a motor car such as used in the present case would be classed as a simple tool.

In Boldt v. R. R., 245 U. S., 441 (62 Law Ed. 385) it is said the risks which the employee assumes include those incident to the negligence of the carrier, officer, agent or employee, which are obvious or fully known to and appreciated by him.

Plaintiff's contention is likewise supported by citation of three cases: Sorenson v. Northern Pacific Ry. Co., 53 Mont., 268, 163 Pac., 560; Panhandle & S. F. Ry. Co. v. Brooks (Tex. Civ. App.), 199 S. W., 665; Iron Co. v. Pace, 17 Pick., 448.

In the first of these cases the court said:

"The action was brought under the Federal Employer's Liability Act (Act April 22, 1908, c. 149, 35 U. S. Stat., 65; Amendment Act, April 5, 1910, c. 143, 36 U. S. Stat., 291; U. S. Comp. St., 1913, Secs. 8657-8665). There is no controversy that at the time plaintiff was injured he was engaged in interstate commerce. Section 4 of the Act takes away the defense of assumption of risk in any case in which a violation of a Federal Statute enacted for the safety of employees has contributed to the injury or death of an employee, but leaves it available in all other cases. Seaboard A. L. R. Co. v. Horton, 233 U. S., 492, 34 Sup. Ct., 635. 58 L. Ed., 1062. L. R. A., 1915 C, 1, Ann. Cas., 1915 B, 475; Southern R. Co. v. Crockett, 234 U. S., 725, 34 Sup. Ct., 897, 58 L. Ed., 1564. The defense may be interposed as a bar in an action for the personal injury or death of an employee, when such injury or death has been caused by a hazard which is incident to the particular business. When it has resulted from a hazard brought about by a failure of an employer to exercise the degree of care required of him by law to perform

his primary duty to provide a reasonably safe place of work and reasonably suitable and safe appliances for the work, the defense is also available, provided the employee is aware of the condition of increased hazard thus brought about, or it is so obvious that an ordinary prudent person under the same circumstances would have observed and appreciated it. The rule thus stated has been recognized and applied by this court in several cases. McCabe v. Great Northern R. Co., 30 Mont., 323, 76 Pac., 701; Hardesty v. Largey Lumber Co., 34 Mont., 151, 86 Pac., 29; Coulter v. Union Laundry Co., 34 Mont., 590, 87 Pac., 973; Leary v. Anaconda C. Min. Co., 35 Mont., 157, 92 Pac., 477; Monson v. La France C. Co., 43 Mont., 65, 114 Pac., 778; Fotheringill v. Washoe C. Co., 43 Mont., 485, 117 Pac., 86; Molt v. Northern Pac. Ry. Co., 44 Mont., 471, 120 Pac., 809. This court has held that the failure of the employer to provide a sufficient number of competent employees to perform the work in hand with reasonable safety to all those engaged in its accomplishment is culpable negligence. Verlinda v. Stone & Webster E. Corp., 44 Mont., 223, 119 Pac., 573. In this case it was said:

" 'Again, if he (the superintendent) permitted Turchin (a co-employee of plaintiff) unaided to undertake to lower the chain, knowing that by reason of its weight Turchin could not hold it, he was guilty of negligence which must be imputed to the company; for it is also a duty of the Master to provide a sufficient number of servants to perform the work with reasonable safety.'

"Whether the rule here stated applies to the facts in the instant case we shall see later.

"It is generally held in cases like this that the employee is the best judge of his own muscular capacity, and the risk is upon him not to overtax it. Stenvog v. Minnesota Transfer Ry. Co., 108 Minn., 199, 121 N. W., 903, 25 L. R. A. (N. S.), 362, 17 Ann. Cas., 240. In this case the plaintiff was directed to assist another employee in loading switch rails into a box car. After the work had proceeded for thirty minutes, the plaintiff found that it was too heavy for him and so informed the defendant's foreman. The foreman disregarded the complaint and directed the plaintiff to go on with the work. In lifting a heavier rail plaintiff strained his back. The court held that he was the best judge of his own capacity, and that in proceeding to do the work, he assumed the risk of overtaxing it, and could not recover.

"In Worlds v. Georgia R. Co., 99 Ga., 283, 25 S. E., 646, the plaintiff, a yard trainman was directed by his superior, the yardmaster—to carry cross-ties to assist in putting a derailed coal car on the track. He complained that the ties were too heavy, but was required by the yardmaster to proceed, which

he did, and was injured by a strain of his back. The court held that the defendant was not liable because, when an employee of a railroad company is directed to lift and carry any ordinary object like a cross-tie, he is bound to take notice that it is heavy, and that a certain amount of physical strength will be required to accomplish his tasks; and if he misconceives the amount to be exerted and overstrains and injures himself in an effort to accomplish it, he assumes the risk. That he acts under the immediate orders of a superior does not alter the case, though he has reason to believe that disobedience will result in his dismissal. To the same effect is the holding in Missouri (Haviland v. Kansas, etc., C. Ry. Co., 172 Mo., 106, 72 S. W., 515), North Carolina (Bryan v. Southern R. Co., 128 N. C., 387, 38 S. E., 914), Tennessee (Ferguson v. Phoenix Cotton Co., 106 Tenn., 236, 61 S. W., 53), Texas (Texas, etc., Ry. Co. v. Miller, 36 Tex. Civ. App., 240, 81 S. W., 535; Haywood v. Galveston etc. Ry. Co., 38 Tex. Civ. App., 101, 85 S. W., 433), and Oklahoma (St. Louis & S. F. R. Co. v. Snowden (Okla.), 149 Pac., 1083). The rule is declared in these cases in varying terms, but from them may be deduced the conclusion stated by the annotator of Stenvog v. Minnesota Transfer R. Co., supra, 108 Minn., 199, 121 N. W., 903, 25 L. R. A. (N. S.), 362, 17 Ann. Cas., 240.

" 'The lifting of heavy objects involves no perils that are not obvious to any person of common understanding; hence an employee who undertakes to lift or assist in lifting a heavy object assumes the risk of injury due to the task being too great for his strength and in case injury results he is not entitled to recover damages from his employer.'

"The rule is thus stated by Mr. White in his work on Personal Injuries on Railroads:

" 'It is quite generally held that when an employee is injured from lifting at a car, or of a steel rail, or of any similar heavy substance, where the weight of the object attempted to be lifted is a matter of common knowledge and the number of men that it takes to handle it is well known by the employee, the risk of such an injury is assumed as an incident of the employment.' Section 339."

It will thus be seen that in this case relied on by plaintiff, the Montana court states the law applicable to the present case just as the Missouri court in Heath v. Railroad, supra, and not only states the rule but supports it by ample authority in Montana and elsewhere. The distinction taken in the Montana case is well stated in the eighth headnote as follows:

"The mere fact that plaintiff with three others had just lifted a heavy rail did not impute to him knowledge, as a matter of law, that another rail of same size and weight was too heavy

for three men to lift in a different place and to a different height.''

There is no proof in that case that the plaintiff had any experience in handling rails except from lifting one other rail with three men to help him and the court said this would not fix him with a knowledge of the danger of lifting a similar rail with only two men to help under different conditions and to a higher elevation. If the plaintiff in the present case had only worked a short time in section work and had only once lifted a work car with the assistance of more men and not so high, the question would be a very different one and might be said to be one for the jury. But Steelman had worked for eight years in railroad section work, using a work car and lifting it on and off the track innumerable times. He said he had not used a motor car except during his last employment of two to four months. However, the only difference in a motor car is that the motor makes the car weigh about 200 pounds more at the end where plaintiff was not lifting. Besides he had experience in lifting this particular car for two months or more.

The case of Panhandle & S. F. Ry. Co. v. Brooks (Tex. Civ. App.), 199 S. W., 665, is easily distinguished from the present case and similar cases referred to. In that case the court said:

"The plaintiff, at the time of the accident, was engaged with four other men, working under the direction of the foreman, in moving a bridge timber, weighing about 700 or 800 pounds, from one flat car to another. Across the end of the car and over which the timber had to be moved was a drain box, the top of which was about two and one-half feet above the floor. Two of the men, one of whom was the plaintiff, were engaged in pulling at the front end of the timber, and the two others assisted by the plaintiff were pushing at the rear. When the center of gravity of the timber passed over the drain box, the forward end dropped suddenly downward and forward, its weight jerking on the plaintiff, who had taken hold of it with a lug, resulting in a hernia or rupture.

"The negligence alleged and submitted to the jury was: first the order and attempt of the foreman to move said timber with a force of men insufficient to handle it with safety; and second, the method employed by said foreman in moving the timber.

"The effect of plaintiff's testimony is that he thought at least six men would be necessary to handle the timber if it was to be carried, but he had not seen timbers handled as this was and did not understand how it was to be handled."

The court further says:

"We can understand how one who has not seen timbers handled in this way might not appreciate the danger or under-

stand how many men would be required to control the timber as it was passed over the drain box. We therefore believe the question was one for the jury."

The case of Iron Co. v. Pace, 17 Pick., 476, was a suit by the plaintiff for injuries resulting from an explosion in a coal mine caused by dust and fire damp negligently allowed to accumulate in the mine. The court held "that plaintiff would not be barred from recovery if he merely knew of the conditions, but neither knew nor ought to have known of the danger therefrom, especially when this danger is established as a scientific conclusion from given facts, and implies a knowledge which might properly be required of the person placed in charge of the safety of a coal mine and yet not be required of an ordinary miner." No language could distinguish a case more clearly from the present case.

The cases of Coal Creek Mining Co. v. Davis, 90 Tenn., 715, and Ferguson v. Phoenix Cotton Co., 106 Tenn., 236, are much more like the present case and in both, the plaintiff was held precluded on the doctrine of assumed risk. The latter case holds that: "The burden is not upon the Master to prove that the servant had actual knowledge of an obvious defect or danger. Knowledge is imputed to the servant in such cases."

There is no controversy as to Steelman's knowledge as to number of men in the crew on the day of the accident and before that day, nor as to his experience in handling work cars on section work. Nothing could be more obvious than the fact, if a fact, of this car being too heavy for the crew to lift and no danger could be more obvious than the danger, if any, risked by plaintiff. No one could explain it to him so as to make it any plainer.

We think, therefore, the defendant's motion for a directed verdict should have been sustained and the third assignment of error is accordingly sustained. If this conclusion were not reached we would hold that it was error to refuse the requests for instructions to the jury set out in the fourth and fifth assignments of error and these assignments would be sustained.

So also if our holding as to the peremptory instruction should not be considered sound, we think the sixth, seventh and ninth assignments of error should be sustained. The ninth assignment is that the court erred in charging the jury as follows:

"If you find that this defendant company was undertaking to do this work with a fewer number of men than was usual and ordinary to use in this place in doing this kind of work and this plaintiff was injured, without any fault on his part, then he would be entitled to recover in this case, unless he understood the situation and the risk he was taking."

This charge directs the jury to find for plaintiff if they find that the defendant was undertaking to do this work with a fewer number

of men than it was usual and ordinary to use unless they find that the plaintiff was at fault, or that he assumed the risk. The company might have been in the habit of using more men to lift this car off and on the track than was necessary. The less than usual number might have been sufficient or more than sufficient and have entailed no risk and no danger. The great preponderance of the evidence is to the effect that six men were amply sufficient and that eight or ten would be in the way. The plaintiff says ten to twelve were necessary. This question was not left to the jury, but they were told that if the crew was smaller than usual, barring contributory negligence and assumption of the risk the jury must find for the plaintiff. It was admitted that the crew was smaller than usual therefore the charge was practically a peremptory instruction in favor of plaintiff in the absence of contributory negligence or assumption of the risk. The defendant was not allowed the benefit of the contention supported by the preponderance of proof that the crew was amply sufficient. It should be borne in mind that the usual crew that went out on this car, went out not for the purpose of lifting the car on and off the track. This was merely incidental. The crew went to work on the track. The car was for the purpose of taking them to work with such tools and material as needed. The lifting on and off was merely incidental to the transportation of the crew to and from work. It was not the work which determined the number of men in the crew. It might be that work on the track of a section would require ordinarily more men than could possibly assist in lifting the car and twice as many as required without danger, yet under the charge, a reduction of the crew on any occasion would be negligence and entail liability. Not only was this charge which is made the basis of the ninth assignment erroneous, but the request number three set out in the sixth assignment covered the very point which constituted error in the charge given.

The sixth and seventh assignments are well taken for another reason: They ask the court to withdraw from the jury the evidence that the men lifting the front of the car pushed or shoved it on the plaintiff and the evidence as to the crow bar. It is true as stated in the third request, that the only ground of negligence alleged in the declaration is the failure of defendant to furnish a sufficient number of men to handle the car without danger to those lifting it. The declaration is to the effect that plaintiff was injured wholly through the negligence of the defendant in failing to supply a sufficient number of men to lift the car. Not a word is said about the weight of the car being shoved on plaintiff by those at the front end of the car. This evidence was irrelevant and should have been withdrawn from the jury.

"Under a declaration averring specific acts of negligence as grounds for recovery the plaintiff cannot recover upon proof of other acts of negligence and defendant is not precluded from insisting upon such fatal variance by his failure to object to the admission of the irrelevant evidence." Coal Co. v. Daniel, 100 Tenn., 72.

It is well settled that the evidence of a plaintiff must conform to the specific acts of negligence alleged in the declaration. Railroad v. Lindamood, 3 Cates, 462; Lock v. Turnpike Co., 16 Pickle, 176; Oil Co. v. Shamblin, 17 Pickle, 271; Transit Co. v. Walton, 21 Pickle, 418.

As to the crow bar, the declaration contains this:

"The injury occurred when plaintiff fell upon the tracks and some instrument, part or appurtenance connected with said motor car, caught him in the back and with the great weight of said car mashed him, crushed and mangled his back and the muscles and tendons thereof, and dislocated one of his kidneys, etc."

There is no charge of negligence on the part of the railway company based upon the existence or conduct of said instrument, part or appurtenance connected with said car and this evidence should have gone out under the authorities just referred to.

The judgment of the lower court will be reversed and judgment entered in this court dismissing plaintiff's suit at his cost.

Owen and Senter, JJ., concur.