INTERNATIONAL AGRICULTURAL CORPORATION

*vs.*

WALTER WILLETTE et al.

Aroostook.   Opinion November 5, 1921.

*The court will grant relief against a false denial of proven interest or bias by a juror being examined by counsel on the voir dire, and accepting such juror relying on his statements as true, when as a matter of fact they were untrue, and the plaintiff being misled thereby, does not constitute a waiver of any rights.*

In an action of assumpsit to recover for potato fertilizer sold and delivered, the jury returned a verdict for the defendants.

One of the jurors when examined by counsel for the plaintiff on the voir dire stated that he had no claim and no interest in any claim against any fertilizer company, when, in fact, he and his partner had at that time a claim against such a company which claim was allowed within one month after this trial to the amount of $1,344.75.

*Held:*

1.   That the plaintiff was entitled to full, fair and frank answers, so that he might challenge the juror if it appeared that he was not indifferent.

2.   That the plaintiff had the right to rely upon the juror's statements and waived nothing by accepting him after his denial of interest.

3.   That the statement being untrue and the plaintiff being misled thereby, the court will grant relief against a false denial of proven interest or bias.

On motion for a new trial by plaintiff.   An action of assumpsit to recover a balance of $9,905.74 for potato fertilizer sold and delivered to defendants.   Defendants filed a plea of general issue and a brief statement alleging that the fertilizer was adulterated and misbranded and was sold in violation of Chap. 36 of the R. S.   The jury returned a verdict for the defendants, and the plaintiff filed a general motion to set aside the verdict, and also a special motion to grant a new trial

because of the disqualification of a member of the jury. The special motion only was considered and sustained, and a new trial granted.

The case is stated fully in the opinion.

*Doherty & Tompkins, Powers & Guild, and Pierce & Madigan,* for plaintiff.

*Charles P. Barnes,* for defendant.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, DUNN, WILSON, DEASY, JJ.

CORNISH, C. J. In an action of assumpsit to recover a balance of $9,905.74 for potato fertilizer sold and delivered to the defendants in the winter and spring of 1917 for use upon their farms in Aroostook County the jury returned a verdict for the defendants, the suit being resisted on the ground that the fertilizer was adulterated and misbranded and was sold in violation of R. S., Chap. 36. The case is now before the Law Court on a general motion to set aside the verdict as manifestly against the evidence, and also upon a special motion to grant a new trial because of the disqualification of a member of the jury. It is necessary to consider only the special motion.

From the evidence taken out under the special motion, it appears that unusual care was taken and each juror was examined on the voir dire by counsel for the plaintiff. One of the jurors so examined was Amos G. Libby, who was engaged in farming in company with his brother under the name of Libby Brothers. The evidence was not taken by the stenographer, but plaintiff's attorney who conducted this examination describes it as follows: "As nearly as I can recollect, I asked Mr. Libby whether he had any claim or interest in any claim against any fertilizer company for adulterated fertilizer, and he replied 'not yet.' I then asked him what his answer meant and whether he did in fact have any claim or interest in any claim against any fertilizer company, practically repeated the first question, to which he said 'No, he had none.'" This juror was then allowed to serve. This testimony as to what took place at the trial is not controverted. The plaintiff had at that time exercised none of its peremptory challenges.

The trial was had at the November term, 1919, and the record shows that on December 15, 1919, the Hubbard Fertilizer Company made a settlement with the Libby Brothers, whereby the company's

bill for fertilizer sold the Libby Brothers in the season of 1919, and amounting to $1,720, was reduced $1,344.75 because of the counter claim of Libby Brothers for injury to their potato crop because of the quality of the fertilizer, leaving a balance of $375.25 due the Fertilizer Company.   This settlement is in writing.

Mr. Libby seeks to explain his former testimony on the voir dire, when he denied the existence of any such claim, by stating that although he had told the fertilizer agents that their crops were not satisfactory and although the agents had visited their farms several times during the summer to examine the crops and to ascertain their condition, still he did not regard that as a claim.   "I don't call it a claim.   They was around looking the crops over, as I said before," was his language.   Perhaps he was attempting to differentiate between a claim reduced to figures, put in written form, and presented to the other side, and a claim existing in fact, although its amount and extent might remain indefinite.   He seems to have had something of the sort in mind when in response to the question on the voir dire as to having any claim, he at first answered "Not yet," and as this was somewhat vague, the attorney put the question again in the broadest possible form so as to give him an opportunity to explain and to state all the facts, if there was any qualification. He then answered without reservation or qualification, "No, he had none."   This disarmed any suspicion that his first answer may have aroused.   The attorney was justified in taking him at his word and accepting him as a disinterested juryman.   He had the right to rely upon his statements and he waived nothing by accepting the juryman after his denial of interest.   *Flagg* v. *Worcester*, 8 Cush., 69.

The answer, however, was in fact untrue, as the evidence proves. Mr. Libby, with his partner, did have at the very time when he was. interrogated a large claim against the Hubbard Fertilizer Company based upon the inferior quality of the fertilizer, a similar question to that involved in the pending suit, and that claim was acknowledged and allowed by that company within one month after the verdict adverse to the International Agricultural Corporation was rendered in this suit.   He must have been deeply interested in the outcome of this litigation.   It was most likely to have an important bearing upon the settlement of his own claim.

At the very basis of our trial system stands a disinterested, unprejudiced jury as triers of the fact, a body every member of which should

be free from bias and prejudice. To this both parties are entitled as a matter of law as well as of justice. In order to secure this result this statute, which is but declaratory of the common law, has been enacted: "The Court on motion of either party in a suit, may examine, on oath, any person called as a juror therein, whether he is related to either party, has given or formed an opinion, or is sensible of any bias, prejudice or particular interest in the cause; and if it appears from his answers or from any competent evidence that he does not stand indifferent in the cause, another juror shall be called and placed in his stead." R. S., Chap. 87, Sec. 99.

The plaintiff exercised this right of examination in the instant case in order to ascertain whether Mr. Libby stood indifferent. He was entitled to full, fair and frank answers, so that he might challenge the juror if it appeared that he was not indifferent. *Gibney* v. *St. Louis Transit Co.*, 204 Mo., 704. "What is meant by a person standing indifferent? Manifestly that the mind is in a state of neutrality as respects the person and the matter to be tried; that there exists no bias either for or against, in the mind of the juror, calculated to operate upon him; that he comes to the trial with a mind uncommitted and prepared to weigh the evidence in impartial scales." *Sellers* v. *The People*, 4 Ill., 412; *The People* v. *Vermilyea*, 4 Cow., 108, 122. The existence of similar circumstances has been recognized as a ground of disqualification. *May* v. *Elam*, 27 Iowa, 365; *Pearcy* v. *Ins. Co.*, 111 Ind., 59; *Davis* v. *Allen*, 11 Pick., 466, and see dictum in *McLellan* v. *Crofton*, 6 Maine at 329.

Had Mr. Libby answered truthfully and given all the facts, the plaintiff's attorney would undoubtedly have challenged him. No attorney, mindful of his duty to his client, could have done otherwise. He was deceived and misled by the juryman's unqualified statement and the court must grant relief against a false denial of proven interest or bias. Otherwise the examination on the voir dire would be a mockery. This court has always been scrupulously vigilant to preserve the absolute impartiality of the panel, *Jewell* v. *Jewell*, 84 Maine, 304, and in case of alleged misconduct has held that it need not be shown that the mind of the juror was actually influenced by the attempt, but whether the attempt might have any tendency to create such influence. *York* v. *Wyman*, 115 Maine, 353, and cases cited.

In the case at bar the plaintiff was deprived of his legal right to have twelve impartial jurymen, all of whom should stand indifferent to the cause, by the misleading and untrue statement of Mr. Libby. That right can be restored only by granting the special motion in this case.

*Special motion sustained.*
*New trial granted.*