DRAPER v. LOUISVILLE & N. R. CO.—66 S. W. (2d) 1003.

Western Section.  April 28, 1933.

Petition for Certiorari Overruled by Supreme Court, December 9, 1933.

R. H. Hudson, of Paris, for plaintiff in error.
R. H. Rhodes, of Paris, for defendant in error.

ANDERSON, J.   This is a suit under the provisions of the Federal Employers' Liability Act (45 USCA, secs. 51-59), instituted

in the circuit court of Henry county by the plaintiff in error, George Draper, hereinafter referred to as the plaintiff, against the defendant in error, Louisville & Nashville Railroad Company, hereinafter referred to as the defendant, seeking to recover damages for personal injuries alleged to have been sustained by the plaintiff, while in the employ of the defendant, as a machinist helper. The plaintiff's injuries are alleged to have resulted from the negligence of the defendant in failing to provide plaintiff a safe place to work and from the negligence of plaintiff's coemployees in the performance of the work in which they and plaintiff were jointly engaged at the time of the accident.

On the motion of the defendant, made at the conclusion of all the evidence, the trial judge directed the jury to return a verdict for the defendant; and, after his motion for a new trial had been overruled, plaintiff appealed in error to this court.

Two errors are assigned. Both are predicated on the action of the trial judge in directing a judgment for the defendant and will be disposed of together.

The grounds relied upon by the defendant in this court to sustain the action of the trial judge are that the undisputed evidence shows that (1) plaintiff's injuries were due to his own overexertion or strain while engaged in the performance of his duties, and not to any negligence on the part of the defendant or its employees; (2) that, if plaintiff's injuries are attributable to the negligence of the defendant or its employees, such negligence and the dangers arising therefrom were open and obvious to the plaintiff fully appreciated by him, and hence he assumed the risk thereof.

▪ The suit having been brought under the Federal Employers' Liability Act (45 USCA, secs. 51-59), the case is governed by the provisions of that act as construed by the courts of the United States and the principles of common law as applied by those courts. Toledo, St. L. & W. R. Co. v. Allen, 276 U. S., 165, 48 S. Ct., 215, 72 L. Ed., 513.

▪ ▪ Under the Federal Employers' Liability Act (45 USCA, secs. 51-59), the right of an injured employee to recover damages from his employer cannot be defeated by showing that the employee was guilty of contributory negligence. Such negligence can only be considered by the jury in diminution of the damages. However, except as to violations of federal statutes enacted for the safety of employees, the defense of assumption of risk as applied at common law is available to the employer in actions under this act, and, when established, is a complete bar to a recovery. Seaboard Air Line Ry. v. Horton, 233 U. S., 492, 34 S. Ct., 635, 639, 58 L. Ed., 1062, L. R. A., 1915C, 1, Ann. Cas., 1915B, 475; Jacobs v. So. R. Co., 241 U. S., 229, 36 S. Ct., 588, 60 L. Ed., 970.

▪ ▪ The distinction between assumption of risk and contrib-

utory negligence, not always easy to follow, is recognized by the federal courts in applying the provisions of the Federal Employers' Liability Act. As construed by the Supreme Court of the United States, an employee assumes the ordinary risks and hazards of his occupation and also those defects and risks which are known to him, or are plainly observable, although due to the master's negligence. Contributory negligence, on the other hand, is the omission of the employee to use those precautions for his own safety which ordinary prudence requires. Schlemmer v. Buffalo. R. & P. R. Co., 220 U. S., 590, 31 S. Ct., 561, 55 L. Ed., 596.

The distinction has been described by the Supreme Court of the United States in the following language:

"And, taking sections 3 and 4 together, there is no doubt that Congress recognized the distinction between contributory negligence and assumption of risk; for, while it is declared that neither of these shall avail the carrier in cases where the violation of a statute has contributed to the injury or death of the employee, there is, with respect to cases not in this category, a limitation upon the effect that is to be given to contributory negligence, while no corresponding limitation is imposed upon the defense of assumption of risk—perhaps none was deemed feasible. The distinction, although simple, is sometimes overlooked. Contributory negligence involves the notion of some fault or breach of duty on the part of the employee; and since it is ordinarily his duty to take some precaution for his own safety when engaged in a hazardous occupation, contributory negligence is sometimes defined as a failure to use such care for his safety as ordinarily prudent employees in similar circumstances would use. On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employee." Seaboard Air Line Ry. v. Horton, supra.

The risks assumed by an employee are of two kinds, ordinary and extraordinary. The ordinary risks are those that are normally incident to an occupation in which an employee voluntarily engaged. An employee is conclusively presumed to have knowledge of such risks and assumes the risk of injuries arising therefrom.

Such ordinary risks are assumed by an employee whether he is actually aware of them or not; for the dangers and risks that are normally or necessarily incident to his occupation are presumably taken into account in fixing his rate of wages. Chicago, R. I. & P. R. Co. v. Ward, 252 U. S., 18, 40 S. Ct., 275, 16 L. Ed., 430; Chicago & N. W. R. Co. v. Bower, 241 U. S., 470, 36 S. Ct., 624, 60 L. Ed., 1107; Chesapeake & O. R. Co. v. De Atley, 241 U. S., 316, 36 S. Ct., 564, 60 L. Ed., 1016; Jacobs v. So. R. Co., 241 U. S., 229, 36 S. Ct., 588, 60 L. Ed., 970.

Among extraordinary risks are those arising out of the fail-

ure of the employer to exercise due care with respect to providing a safe place to work and suitable and safe appliances for the work. Such risks are assumed by the employee only when he has knowledge of them and dangers arising therefrom, or when the risks and the dangers are so obvious that an ordinarily prudent person under similar circumstances would have known the risk and appreciated the danger arising therefrom. Chicago, R. I. & P. R. Co. v. Ward, supra; Montgomery v. Baltimore & O. R. Co. (C. C. A.), 22 F. (2d), 359; Voochees v. Central R. Co. of N. J. (C. C. A.), 14 F. (2d), 899; Davis v. Crane (C. C. A.), 12 F. (2d), 355; Central of Ga. R. Co. v. Davis (C. C. A.), 7 F. (2d), 269; Erie R. Co. v. Regan (C. C. A.), 297 F., 435; Davis v. Scroggins (C. C. A.), 284 F., 760; Hines v. Logan (C. C. A.), 269 F., 105; Delaware, L. & W. Co. v. Busse (C. C. A.), 263 F., 516.

In cases governed by the Federal Employers' Liability Act (45 USCA, secs. 51-59) a coemployee's negligence, when it is the ground of action, stands in the same relationship as the employer's negligence upon the question of whether or not the employee is deemed to have assumed the risk, notwithstanding the provisions of the act abrogating the fellow servant's rule of common law. Chesapeake & O. R. Co. v. De Atley, supra; Erie R. Co. v. Linnekogel (C. C. A.), 248 F., 389.

If an employee becomes aware of the risk and dangers arising from the negligent act of a fellow servant, or if the risk and dangers arising therefrom are so obvious that an ordinarily prudent person under similar circumstances would have observed the one and appreciated the other, then, under the federal statute as construed by the United States courts, the employee assumes the risk arising from such negligent act of his coemployee. Chicago & N. W. R. Co. v. Bower, 241 U. S., 476, 36 S. Ct., 624, 60 L. Ed., 1107; Southern R. Co. v. Gray, 241 U. S., 333, 36 S. Ct., 558, 60 L. E., 1030; Louisville & N. R. Co. v. Stewart, 241 U. S., 261, 36 S. Ct., 586, 60 L. Ed., 989.

With these principles of law in mind, it becomes necessary to examine the facts disclosed by the record. In doing this, since the question under consideration is the correctness of the action of the trial judge in directing the verdict in favor of the defendant, that view of the evidence most favorable to the plaintiff's case must be taken.

The plaintiff is fifty-five years of age. He had been in the employ of the defendant for twenty-five years as a helper in the roundhouse in defendant's shops in Paris, Tennessee. For ten years he had been a member of what is known in the record as the "spring gang." This gang usually consisted of three men whose duty it was to remove defective springs from the engines of defendant and replace them with new ones. The work was done in the round-

house of defendant. The method employed was to raise the engine by means of jacks and remove the defective spring which rested on a saddle on the driving box inside of the driving wheel. After the spring was removed, the new sring was raised to the rim or tire of the engine wheel and rested thereon. One of the men then stationed himself upon the axle and let the spring down onto its resting place inside the wheel. The main driving springs, one of which was upon the occasion involved in this case to be changed, consist of thirteen leaves, four inches wide, ranging in length from six to thirty-four inches. The leaves are held together by steel pins and a spring weighs about 220 pounds. When in place, it stands from five feet six inches to five feet nine inches from the floor or ground depending upon the thickness of the tire.

On the morning of April 2, 1930, the "spring gang," of which plaintiff was a member, was instructed to change the main driving spring on engine No. 202 which had arrived in Paris from an interstate trip at 12:35 A. M. on that date. The changing of the spring on this engine was necessary to enable it to leave at 10:35 A. M. that day on another interstate trip for which it had been designated.

The "spring gang" began this work of changing the spring at about 8:30 o'clock A. M. The engine was then standing in the roundhouse of the defendant and alongside of it was a concrete walkway. The roundhouse was well lighted, having a glass roof and windows, the latter extending to within four or five feet of the floor.

Before the spring gang arrived on the scene to begin work, some sand had been taken from the fire box of the engine and swept up into a pile or row on the concrete floor at or near the place where the spring gang would necessarily have to work in replacing the spring. This had been done by another employee of the defendant not a member of the spring gang. This employee was not supposed to leave the sand on the floor in this condition. It was his duty to remove it entirely. However, on this particular occasion he had been called aside to perform some other duty before he had finished carting the sand away and had temporarily left it in the condition above indicated. This sand was at or near the driving wheel of the engine on which it was necessary to rest the spring in the process of making the change. It was coarse sand, partly wet and partly dry. It lay about two and one-half inches deep for a distance of four or five feet. The width of the pile or row does not appear. Such was the situation at the time the spring gang began its work of changing the spring.

On this particular occasion there appeared to have been four men engaged in the work. After removing the old spring, one of the men stationed himself on the axle for the purpose of placing the new spring in its resting place after it had been lifted and placed by

the others on the tire of the wheel. The new spring was apparently on the concrete floor within a few feet of the driving wheel although its exact position prior to the time the plaintiff and its coemployees picked it up does not clearly appear. Plaintiff and the other two employees proceeded to lift the spring and place it on plaintiff's shoulder, he being in the middle, and one of the others at each end of the spring. It was intended that after the spring was balanced on the plaintiff's shoulder that he should turn about half way, take a step or two, and place the spring on the tire of the driving wheel.

While thus engaged, the plaintiff and his coemployees were apparently standing in the row of sand which had been left on the floor as above indicated; and at or about the time the spring was placed or balanced on plaintiff's shoulder, the sand caused the feet of one or both of his coemployees to slip, and, as a result, the spring then resting on plaintiff's shoulder became overbalanced. In endeavoring to hold the spring and prevent its falling on his coemployees or himself, plaintiff's feet also slipped on the sand, he became overbalanced, and, after stumbling about a bit, finally fell to his knees. His testimony is to the effect that the sand rolled over under his feet causing him to slip; that his coemployees pushed him; that he became overbalanced, stumbled, and fell to his knees.

While endeavoring to handle the spring under the circumstances indicated, the plaintiff was suddenly struck with a severe pain in his back. However, after an interval, he and the other members of the spring gang placed the spring on the shoulders of one of the other employees and put it in position on the engine. Plaintiff continued to work that day, performing only light tasks. He was unable to go to his work on the next day and a subsequent diagnosis by a competent physician indicated that, as a result of the accident, he sustained severe and probably permanent injuries to the fifth lumbar vertebra and is incapacitated from again performing the kind of work in which he had been engaged.

██ It was the duty of defendant to exercise reasonable care, to provide plaintiff a safe place within which to do the work required of him, and the plaintiff was entitled to act upon the assumption that this duty had been performed upon the occasion in question. He was not required to make an investigation as to whether or not the defendant performed its duty in this respect, but only to have due regard for what he actually knew and for what was so patent as to be readily observable by him by the reasonable uses of his senses, having in view his age, intelligence, and experience. United States Smelting Co. v. Parry (C. C. A.), 166 F., 407; Davis v. Scroggins (C. C. A.), 284 F., 760-763, writ of error dismissed 262 U. S., 734, 43 S. Ct., 702, 67 L. Ed., 1206; Chicago, R. I. & P. R. Co. v. Ward, 252 U. S., 18, 40 S. Ct., 275, 64 L. Ed., 430.

██ If it be conceded that the sand on the floor rendered

unsafe the place at which plaintiff had to work and that this was due to the negligence with which the defendant is chargeable, the question remains as to whether plaintiff assumed the risk of the dangers involved in undertaking to lift and replace the spring under the conditions then and there existing. If the plaintiff had knowledge of the fact that the sand was on the floor and of the danger involved in doing the work while it remained there or if the risk and danger therein involved were so obvious that an ordinarily prudent person under similar circumstances would have known the risk and appreciated the danger arising therefrom, then in undertaking the performance of the task under these conditions he must be held to have assumed such risks and dangers as were incident thereto. Chicago, R. I. & P. R. Co. v. Ward, supra; Montgomery v. Baltimore & Ohio R. R. Co. (C. C. A.), 22 F. (2d), 359; Voochees v. Central R. Co. of N. J. (C. C. A.), 14 F. (2d), 899.

Plaintiff had been engaged in doing the character of work in question for ten years. There is no contention that he was not of average intelligence and discretion. He was fully aware of the weight of the spring to be raised, the number of men required, the extent of physical effort involved, the method ordinarily pursued, and he must have known equally as well, if not better than the officials or other representatives of the defendant, the circumstances under which the work could be safely conducted. The very nature of the task and the methods used made a steady underfooting for those engaged therein essential to the work being safely accomplished. This he must have known.

That the sand was on the concrete floor at or about the very place where plaintiff and his coworkers had to get the spring that was to be placed on the engine is established by the evidence. It had been swept into a "windrow," four or five feet long and two and one-half inches deep. One of the plaintiff's witnesses testifies to the effect that the sand being on the floor was calculated to make those lifting a weight slip. This was an ordinary natural law of universal application that required no proof. Brady v. Buggs, 38 Ga. App., 48, 142 S. E., 304; Williams v. A. C. L. R. Co., 18 Ga. App., 117, 89 S. E., 158.

The work in which plaintiff was engaged was being done in the daytime and the place was exceptionally well lighted. The plaintiff testifies that he did not see the sand, that his mind was on the spring, but he also testifies that there was nothing to prevent him from seeing it and that he could have done so if he had looked. On cross-examination he testifies in effect that the sand was not all over the place where the work had to be done and that it would have been avoided by moving a little to one side.

Under these circumstances we are of the opinion that the risk and dangers arising from undertaking to lift the spring and place it in

position with the insecure underfooting caused by the sand being on the floor were so obvious and patent that an ordinarily prudent person of similar experience and under similar circumstances would have known the risk and appreciated the danger arising therefrom; and that said risk and danger could have been readily observed and appreciated by the plaintiff by the reasonable use of his senses, having in view his intelligence and experience in this line of work. This being true, the burden was not upon the defendant to prove that the plaintiff had actual knowledge of the existence of the sand on the floor and the danger arising from attempting to do the work while it remained there. Under such circumstances, knowledge thereof is imputable to him. Ferguson v. Cotton Mills, 106 Tenn., 236, 61 S. W., 53; Brown v. Electric Ry. Co., 101 Tenn., 252, 47 S. W., 415, 70 Am. St. Rep., 666; Standard Knitting Mills v. Hickman, 133 Tenn., 43, 179 S. W., 385.

The knowledge of the situation and whatever danger existed chargeable to the plaintiff was at least equal to that chargeable against defendant. Under these circumstances, it must be held that the accident from which plaintiff's injuries resulted was a risk assumed by him in undertaking to handle the spring while the sand was on the floor. Jacobs v. Southern Ry. Co., 241 U. S., 229, 36 S. Ct., 588, 60 L. Ed., 970; Brady v. Bugg, 38 Ga. App., 48, 142 S. E., 304; Williams v. A. C. L. R. Co., 18 Ga. App., 117, 89 S. E., 158; Ferguson v. Cotton Mills, 106 Tenn., 236, 61 S. W., 53; Standard Knitting Mills v. Hickman, 133 Tenn., 43, 179 S. W., 385; Tenn. C. R. Co. v. Williams, 9 Tenn. App., 529; C., N. O. & T. P. R. Co. v. Steelman, 7 Tenn. App., 664; Trotter v. Furn. Co., 101 Tenn., 257, 260, 47 S. W., 425; Nashville, C. & St. L. Ry. v. Handman, 13 Lea, 423; Railroad Co. v. Edwards, 111 Tenn., 31, 76 S. W., 897.

The action of the trial judge in sustaining the defendant's motion for a directed verdict in its favor was therefore correct. The assignments of error are accordingly overruled and the judgment of the lower court is in all respects affirmed at the cost of the plaintiff in error.

Senter and Heiskell, JJ., concur.