James Robert MERRITT and Emma Lou Merritt, Plaintiffs-Appellants,

v.

Hanson CARR and R. J. Crumley, d/b/a Big Springs Farms, Defendants-Appellees.

Court of Appeals of Tennessee, Eastern Section.

Feb. 6, 1980.

Certiorari Denied by Supreme Court June 29, 1981.

---

2. Now T.C.A., § 50–1013 (e)(12).

Richard L. Banks, Cleveland, for plaintiffs-appellants.

William Biddle, with Higgins, Biddle & Chester, Athens, for defendant-appellee Crumley.

J. Dudley Culvahouse, Decatur, for defendant-appellee Carr.

OPINION

SANDERS, Judge.

The Plaintiffs have appealed from a directed verdict in favor of the Defendants, notwithstanding a jury verdict in favor of the Plaintiffs.

The Plaintiff-Appellant, James Robert Merritt, filed suit for personal injuries in the circuit court against the Defendants-Appellees, Hanson Carr and R. J. Crumley, d/b/a Big Springs Farms. The complaint alleges Defendants Carr and Crumley were engaged in a dairy farming operation in Meigs County in 1977. The Plaintiff was employed by the Defendants in the dairy operation when he was injured by virtue of a cow falling on him. It is alleged the Defendants were negligent in not furnishing the Plaintiff a safe place to work and failure to furnish him needed assistance to carry out his work. The Plaintiff-Appellant, Emma Lou Merritt, joined in the complaint seeking damages for loss of consortium.

The Defendants, Carr and Crumley, filed separate answers. They both denied any acts of negligence resulting in the Plaintiff's injuries. Defendant Carr also denied the Plaintiff was employed by him but said the Plaintiff was the employee of the Defendant, Crumley. Both Defendants also relied upon contributory negligence and assumption of the risk.

The case was tried before a jury which found the issues in favor of the Plaintiffs. They fixed the damages of Mr. Merritt at $70,000 and the damages of Mrs. Merritt at $5,000.

The Defendants each filed a motion for a directed verdict or, in the alternative, for a new trial. The court granted the motions for a directed verdict as to both Defendants on the grounds of assumption of the risk. Plaintiffs have appealed, presenting the action of the court as the issue for review.

Although the proof is not without dispute, when we consider it in the light most favorable to the Plaintiffs, as we are required to do in this case, it shows Mr. Carr owned a dairy farm known as Big Springs

Farms in Meigs County. He owned all of the improvements, dairy equipment, cattle, etc., used in connection with the operation of the dairy. Mr. Carr and Mr. Crumley had an agreement that Mr. Crumley would furnish all of the labor for operating the dairy and they would divide the income produced from the sale of milk.

Before coming to the Big Springs Farms Dairy some three to four months prior to the accident, the Plaintiffs had been employed by Mr. Crumley in his dairy operations at Woodbury, Tennessee. When they came to Big Springs Farms their job was to milk the dairy herd and keep the dairy barn and holding pens clean. They were milking between 185 and 200 head of cows. At milking time they would bring the herd in from the pasture and put them in a large holding pen. They would then put 45 to 50 head into a smaller holding pen and from there they would put individual cows into milking parlors. They milked 16 head at the same time.

A short time before the accident happened a number of young cows, or heifers, with their first calves were added to the herd. The young cows were more difficult to handle than the old cows and it apparently required a great deal more effort to get them from the holding pen into the milking parlor.

On the morning of the accident when Plaintiffs had completed milking most of the herd, Mr. Merritt transferred the last 40 or 45 cows from the large holding pen into the small holding pen, which was about 20 by 20 feet square. Most of these cows were the young heifers. Immediately following the transfer of these cattle the accident occurred. Mr. Merritt described the occurrence of the accident as follows: "I went out to the big holding pen, opened the gate back, drove them into the little holding pen. I turned around and fastened the gate behind me. When I turned back around, there was a post standing there, it's a brace post, I walked over to the post, they were coming around the wall. Their heads, they were pushing into each other, coming around that wall, and there's two drain

holes; and, the front cow, they were pushing her and crowding her. Her feet went down in the hole; and, when she came back up, trying to come up out of that hole and her feet would kinda slide out from under her, and when she did, right against me she came. When I went down, she came in on top of me."

As a result of the accident Mr. Merritt received serious injuries.

The small holding pen had two drain holes near the door leading into the milking parlor. The openings of these drains were five to six inches in circumference and were used in connection with washing down the holding pen. On one occasion prior to the accident Mr. Merritt had suggested to Mr. Crumley he should get covers for the drain holes because of the likelihood of a cow's stepping into one of them and breaking her leg. His testimony was: "I said, while you're at it, them drain holes in there, a cow's gonna break her legs if she ever steps in one of them because it's not covered up no way."

He also testified Mr. Crumley did not indicate to him whether or not he was going to put covers on the drains.

Mr. Merritt further testified that when he first started working at the dairy he washed the holding pen down twice a day, after milking operations in the morning and again at night. Mr. Crumley told him to wash it down only once a day, after milking operations in the morning. It is the insistence of the Plaintiff that the failure of the Defendants to place drain covers on the drains caused the cow to get her foot in the drain hold and lose her balance and that failure to have the holding pen washed down after milking operations the night before resulted in the floor of the holding pen being more slippery than it otherwise would have been because of a greater accumulation of manure. As a result of this the cow could not regain her footing and fell on the Plaintiff.

The trial court filed the following memorandum opinion in connection with his directing a verdict:

"In regard to defendants Motion for a New Trial or a Motion for a New Trial, [sic (directed verdict)] after due consideration, the Court is of the opinion a directed verdict of not guilty should have been made by the Court at the conclusion of plaintiff's proof.

"The undisputed evidence showed that plaintiff, James Merritt, and both defendants were men of much experience on the operation of a dairy. The proof most favorable to plaintiff shows that both plaintiff and defendant knew of the missing drain cover. In fact, plaintiff says he called defendant Crumley's attention to this defect. There is no proof by direct or circumstantial evidence. Whether or not assumption of risk or contributory negligence must be applied totally against plaintiff's suit must rest upon the theory of the presence or absence of superior knowledge of the danger of injury to the employee (plaintiff). Taking all the evidence most favorable to plaintiff the Court finds no evidence to indicate any superior awareness on the part of the defendants.

"The Court is of the opinion the case of *Draper v. Louisville & N. R. Co.*, 17 Tenn. App. 213, 66 S.W.2d 1003 and, to a lesser extent, *Marsh v. Fowler*, 207 Tenn. 377, 340 S.W.2d 881, are controlling."

■ We concur with the finding of the trial court. There is no proof in the record that any aspect of the holding pen or any danger which may have existed in connection with the holding pen was not as well known to the Plaintiff as to either of the Defendants. In addressing the question of knowledge as between employer and employee of any existing danger, the court, in the case of *Draper v. Louisville & N. R. Co.*, 17 Tenn.App. 213, 66 S.W.2d 1003 (1933), said:

"The knowledge of the situation and whatever danger existed chargeable to the plaintiff was at least equal to that chargeable against defendant. Under these circumstances, it must be held that the accident from which plaintiff's injuries resulted was a risk assumed by him in undertaking to handle the spring while the sand was on the floor."

Although the *Draper* case was one involving the Federal Employers Liability Act, it states the general law controlling in master-servant cases.

In the case of *Tenn. Cent. Ry. Co. v. Shacklett*, 24 Tenn.App. 563, 147 S.W.2d 1054 (1940) the court said, at 569:

"We think the decisions which we are bound to follow compel the conclusion, as a matter of law, that Shacklett assumed the risk from which his death resulted. According to these decisions, an employee assumes the ordinary risks of his employment and also assumes the extraordinary risks, or risks caused by the employer's negligence, which are obvious, or fully known and appreciated. *Delaware, L. & W. R. Co. v. Koske*, 279 U.S., 7, 8, 49 S.Ct., 202 [203], 73 L.Ed., 578, 579; *Cincinnati N. O. & T. P. Ry. Co. v. Brown*, 158 Tenn., 75, 12 S.W.(2d), 381; *Luck v. Louisville & N. R. Co.*, 167 Tenn., 350, 69 S.W.(2d), 899; *Draper v. Louisville & N. R. Co.*, 17 Tenn.App., 213, 66 S.W.(2d) 1003, and cases there cited."

In the case of *Stoker v. Hicks*, 57 Tenn. App. 443, 419 S.W.2d 626 (1967) the court, in reversing a jury verdict and holding the trial court should have directed a verdict on the grounds the deceased assumed the risk, quoted from the *Draper* case as follows:

" 'The risks assumed by an employee are of two kinds, ordinary and extraordinary. The ordinary risks are those that are normally incident to an occupation in which an employee voluntarily engaged. An employee is conclusively presumed to have knowledge of such risks and assumes the risk of injuries arising therefrom.'

"If that statement is true, than in order for this defendant to have been held liable, under the theory of liability as alleged in the first count of the declaration and the proof in this record, to recover, certainly it would have to be proven that the discovery of that type of a situation was made by the deceased and that he had actually requested a correction of

whatever condition then existed that brought that knowledge home to him. . . . ."

\* \* \* \* \* \*

" 'If an employee becomes aware of the risk and dangers arising from the negligent act of a fellow servant, *or if the risk and dangers arising therefrom are so obvious that an ordinarily prudent person under similar circumstances would have observed the one and appreciated the other*, then, under the federal statute as construed by the United States courts, the employee assumes the risk arising from such negligent act of his co-employee.' (Emphasis added.)

"Abundant authorities are cited in that opinion to support both classes of risks and accompanying activities which Judge Anderson said would exonerate the employer on the ground that employee had assumed the risk. He did have in this case the consideration of the Federal Employers' Liability Act, but omitting that fact, there is no difference that can be discerned legally, when you strip that opinion of the mere fact that it was covered by Federal Employers' Liability Act, and that of the employer and employee in the ordinary course of any other business."

In the case of *Marsh v. Fowler*, 207 Tenn. 377, 340 S.W.2d 881 (1960) the plaintiff, who was a farm laborer, was injured while riding a horse that fell with him. Plaintiff alleged the defendant failed to furnish him a reasonably safe place to work. Among other things, he alleged, "The defendant negligently allowed said road to remain in a rocky, unsafe and dangerous condition; and they failed to make this road reasonably safe for plaintiff for the purposes for which it was used." In sustaining a demurrer to the declaration, the court said, at page 883:

"Moreover, there is no allegation that this accident occurred at nighttime or during insufficient light, hence the condition of the road was just as obvious to the plaintiff as it was to the defendants or anybody else and according to the declaration, he had already been employed there for at least several months."

In the case of *O'Brien v. Smith Brothers Engine Rebuilders, Inc.*, Tenn.App., 494 S.W.2d 787 (1973) the court said:

"Knowledge is the keystone which holds up the doctrine of Assumption of Risk. Nothing more or nothing less than actual knowledge is required. If the proof raises the question of whether a reasonably prudent man would or should have discovered the danger and avoided it, the issue of contributory negligence is created and not one of assumption of risk. What a reasonably prudent man would or should have done under the circumstances is a matter for jury determination."

The Plaintiffs say the question of whether or not the Plaintiff assumed the risk was a question for the jury and rely upon the case of *Overstreet v. Norman*, 44 Tenn.App. 343, 314 S.W.2d 47 (1958) in support of their contention.

Although at first blush *Overstreet* appears to support the contention of the Plaintiffs, we think it is to be distinguished from the case at bar. In the *Overstreet* case the plaintiff was employed as a bean picker. She had been transported to her place of employment on a flatbed truck. There were no steps for her to use as she alighted from the truck. A fellow employee placed a bean hamper upside down for her to step on. The hamper turned over and the plaintiff fell. The reason for submitting the case to the jury is stated by the court as follows:

"In this case, we think this duty upon defendant to furnish plaintiff a reasonably safe place and safe appliances for the work included a reasonably safe means of alighting from the truck. Evidence was that such a means could have been provided by affixing to the rear of the truck an iron step or an automobile casing as such step, and that it was a custom of others to do that when using such a truck to haul bean pickers.

"This evidence of such custom was competent as tending to prove the standard of conduct of reasonable men (*De Ark v. Nashville Stone Setting Corp.*, 38

Tenn.App. 678, 682, 279 S.W.2d 518, and authorities there cited); and we think that the jury could reasonably find from the evidence that defendant breached his duty of furnishing plaintiff a reasonably safe means of alighting from the truck and was guilty of negligence which proximately caused her injuries."

It will be observed there was a question of custom tending to prove a standard of conduct. The court held this to be a jury question. We have no such issue in the case at bar.

The Plaintiffs also rely upon the case of *Ellithorpe v. Ford Motor Company*, Tenn., 503 S.W.2d 516 (1973). In that case the court said for there to be an assumption of the risk three conditions must be met: (1) The plaintiff must discover and know about the defects; (2) He must understand and appreciate the danger of the defects present; and (3) He must voluntarily expose himself to it. Plaintiff says No. 1 above is the only one of the criteria met in the case at bar.

■ We cannot agree. The Plaintiff not only knew of the defects about which he complains but appreciated the dangers connected therewith as fully, if not more so, than anyone else and with this knowledge he voluntarily entered the holding pen with the herd of cattle.

The issues are resolved in favor of the Appellees and the judgment of the trial court is affirmed.

The Appellees assigned certain errors but they have been rendered moot since the judgment of the trial court is affirmed. The allowable cost of this appeal is taxed to the Appellants.

Since numerous documents are included in the record in violation of T.R.A.P. Rule 24, the case is remanded for the trial court to fix the allowable cost for the clerk.

PARROTT, P. J. (E. S.), and GODDARD, J., concur.