Jayme R. OWEN and wife, Lynda Joan Owen, Plaintiffs–Appellees,

v.

ARCATA GRAPHICS/KINGSPORT PRESS and Hawkins County Plants, et al., Defendants–Appellants.

Court of Appeals of Tennessee, Eastern Section.

Dec. 10, 1990.

Permission to Appeal Denied by Supreme Court May 6, 1991.

E. Clifton Knowles, Bass, Berry & Sims, Nashville, M. Lacy West and Steven C. Rose, West and Rose, Kingsport, for defendants-appellants.

David S. Haynes, Bristol, John P. Chiles and Carl W. Eilers, Eilers & Chiles, Kingsport, for plaintiffs-appellees.

## OPINION

SANDERS, Presiding Judge, Eastern Section.

The Defendant has appealed from a jury verdict awarding Plaintiffs damages for personal injuries received when a quantity of books, which had been stacked in the warehouse of the Plaintiff's employer, fell on him.

The Defendant–Appellant, Arcata Graphics (Arcata) is engaged in manufacturing books in Kingsport and Hawkins County. After the books are manufactured they are shipped to the respective customers. As pertinent here, it appears the books are usually placed on wooden pallets and are either strapped with metal strapping and fastened to the pallet or wrapped with stretch wrap, which is a very strong plastic type material, to hold them in place. There also appear to be two different methods of palletizing the books and the method used by Arcata depends on the method preferred by the customer. It appears that most customers' books are loaded directly on the pallet so when they are handled by a forklift the forks of the forklift are inserted in the openings of the pallet and raised up against the boards of the pallet on which the books are resting, and the pallet remains an integral part of the stack of books while they are being loaded or unloaded from a shipping vehicle or onto a loading dock or into a warehouse, or when the books are stacked. Other customers request that their books be shipped by "glide packs." This requires packaging the books and placing the package on a pallet so that, for unloading, the forks of the forklift can be inserted between the top boards of the pallet and the packaged books. When the "glide pack" method is used the pallet stays on the vehicle in which the books are shipped and does not move onto the loading dock or into the warehouse or remain with the books which are stacked.

In January, 1987, the Plaintiff–Appellee, Jayme Owen, was employed by National Book Debinding Company (NBD). NBD was engaged in the business of purchasing surplus books from Arcata, removing the bindings from the books and selling the paper to paper mills for recycling. It had a facility in Weber City, Virginia, for debinding and processing books purchased from Arcata and Mr. Owen was manager of the Weber City operation. NBD's contract with Arcata provided that any books purchased would be processed through the debinding operation within 60 days of purchase. On January 19, 1987, Arcata delivered to NBD's facility in Weber City a shipment of surplus books which had been manufactured and palletized for shipment to Scott, Foresman & Company (Scott), an Illinois company. Scott was one of Arcata's customers which requested its shipments be made on glide packs. To make shipments on glide packs, Arcata used a conventional pallet but placed four timbers, each equivalent to a $2'' \times 4''$, on the surface of the pallet, then brick-stacked the containers of books onto the runners or 2 $\times$ 4's, and wrapped the books with stretch wrap. The purpose of the runners or 2 $\times$ 4's was to create two small tunnels between the top of the pallet and the bottom of the cartons of books for the forks of the forklift to pass through so the books could be unloaded from the vehicle in which they

were shipped without moving the pallet along with the books. When the books were shipped to NBD they were shipped on glide packs. The glide packs were not stacked but each one was about five feet high. There were apparently 20 glide packs on the truck. NBD employed the services of Mr. Emory Prillhart, under the supervision of Mr. Owen, to use his forklift to unload the truck and stack the books in its warehouse. Since the books were on glide packs, they could have been removed from the truck and placed in the warehouse either with or without the pallets. For some reason, which is not explained in the record, NBD removed the books with the pallets attached and stacked them in its warehouse in stacks three packs high and approximately 15 feet in height. On April 7, some 82 days later, the two top pallets of books fell, resulting in injuries to the Plaintiff.

The Plaintiff filed suit against Arcata, Emory C. Prillhart, and Scott. In his complaint Plaintiff alleged Arcata was negligent in that it failed to properly stack the boxes of books on the pallets and it failed to properly secure the boxes of books to the pallets with straps or by other methods. Plaintiff alleged Defendant Prillhart negligently failed to properly stack the pallets of books after unloading them from the Arcata truck; he was negligent in stacking the pallets three high when he knew, or should have known, they should not be stacked three high; and he negligently failed to keep the stacks of pallets in an orderly and safe condition and allowed the pallets to lean and tilt after he had stacked them. The complaint alleged Scott was the owner of the books, Arcata was its agent, and Prillhart was its employee and Scott was negligent in that it failed to properly train, supervise and direct its agent, Arcata, and employee, Prillhart, in proper handling, packing and stacking books.

Plaintiff–Appellee Lynda Owen, as wife of Jayme Owen, joined in the complaint, asking for damages for loss of consortium. Jayme Owen sought damages in the amount of $2,285,000 and Lynda Owen asked for $465,000.

Arcata, for answer, joined issue on all issues in the complaint. It denied it was the agent of Scott or that Prillhart was its employee. It alleged it sold the books to NBD to be destroyed. After the books were delivered to NBD at its facility Arcata had no ownership in or dominion or control over the books. It denied it was guilty of any acts of negligence. It averred the Plaintiff was guilty of contributory negligence and assumption of the risk which proximately caused or contributed to his own injuries. He knew, or should have known, the stacks of books were unstable and likely to fall. Notwithstanding Plaintiff's knowledge of the danger, he did not use due care and caution for his own safety. It alleged Plaintiff negligently stacked the books, resulting in their falling. The negligence of the Plaintiff and his employees, over which Defendant had no control, was an independent and intervening cause of Plaintiff's injuries.

A nonsuit was entered by the Plaintiffs before the trial as to Prillhart and Scott and their answers to the complaint are not in the record before us.

Upon the trial of the case the Defendant moved for a directed verdict at the close of proof. The motion was overruled and the case submitted to the jury. The jury found the issues in favor of the Plaintiffs. They fixed the damages as to Jayme Owen at $838,900 and the damages of Lynda Owen at $465,000.

The Defendant filed a motion for a judgment notwithstanding the verdict or for a new trial or remittitur. The court granted a remittitur on the award to Lynda Owen of $200,000, reducing it to $265,000, but otherwise overruled the motion.

The Defendant has appealed, presenting the following issues for review:

"1. Was the Court in error in failing to direct a verdict for Arcata at the conclusion of the proof, since Arcata owed no duty to the plaintiff and because no act or omission of Arcata caused plaintiff's injuries?

"2. Was the Court in error in refusing to give Arcata's written request for jury

instruction regarding conjecture between causes of equal probability?

"3. Was the Court in error in its instruction to the jury on contributory negligence?

"4. Was the Court in error in refusing to charge the jury on assumption of risk?

"5. Was the Court in error in its charge concerning damages and its failure to instruct on present cash value?

"6. Was the Court in error in refusing to give Arcata's requested instruction on ownership of books?

"7. Was the Court in error in failing to grant Arcata a new trial based upon misconduct of juror Betty New?

"8. Was the Court in error in failing to grant a new trial to defendant, Arcata, based upon closing arguments of counsel for plaintiff?"

Our consideration of the record as a whole leads us to the conclusion there is merit in Appellant's issues 4 and 7 which require a remand of the case for a new trial. For this reason, the other issues presented are pretermitted.

 We first address Appellant's insistence it was error for the court to refuse to charge the jury on the issue of assumption of the risk. At first blush it would appear our holding on this issue is in direct contravention of *Rule v. Empire Gas Corporation*, 563 S.W.2d 551 (Tenn.1978), where our supreme court held Rule 51.02, T.R.Civ. P., did not abolish or alter the rule "that in order to predicate error upon an alleged omission in the instructions given to the jury by the trial judge he must have pointed out such omission to the trial judge at trial by an appropriate request for instruction," in that no written request was presented to the court by the Appellant. We do not consider our holding to be in derogation of *Rule,* but rather an exception to it, in that to have submitted a written request under the circumstances of this case would have been an idle act. The record shows that upon the conclusion of all the evidence but before oral argument of the case, the court said to counsel for the parties, "If counsel will come back in

my office right now for just a minute, I'll tell you what I'm going to instruct the jury to assist you in your final argument." The court reporter was not present in the judge's chambers but the parties all agree the propriety of an instruction on assumption of the risk was discussed between the court and counsel for the Appellant. The essence of that discussion appears to be contained in the following exchange between the court and Appellant's counsel in a hearing on Appellant's motion for a new trial, as follows:

"MR. ROSE [Attorney for Appellant]: .... That was discussed in chambers, and you elected not to charge assumption of risk, and that was discussed, and I recall you discussing that with Mr. Haynes in chambers, and we say that the issue of assumption of risk should have been charged in to this jury.

"THE COURT: I think as we talked in that discussion on instructions, I told you I just felt there were no facts to support assumption of risk and I believe I read you the instruction on assumption of risk and showed you that you have got to have facts that the plaintiff was aware of the danger and knowingly submitted himself to it, and I felt I would be in error if I charged it, and as a result there was no request for it.

"MR. ROSE: Other than the discussion in chambers.

"THE COURT: Huh?

"MR. ROSE: That's right, there was a discussion about it in chambers, on the assumption of risk.

"THE COURT: But there was no request after the discussion.

"MR. ROSE: There was no written request on that particular charge other than our discussion.

"THE COURT: All right. That's overruled."

We think this dialogue establishes that a request on assumption of the risk was made and refused; it was just not requested a second time.

By the court's having told counsel for the Appellant, during a brief respite of the

jury just prior to instructing the jury, that he would not instruct the jury on assumption of the risk and, "I felt it would be in error if I charged it," it certainly would have been an idle and futile act, in fact almost contemptuous, for counsel to profer such a written request at that time. The only jurisdiction in which we have found a case which has addressed this specific issue is California, in the case of *Hudspeth v. Jaurequi*, 44 Cal.Rptr. 428, 429, 234 Cal. App.2d 526 (1965). In *Hudspeth*, counsel had requested a charge on res ipsa loquitur. He was told by the court he did not think the doctrine was applicable under the proof in the case. Toward the end of the trial counsel orally renewed his request. The court reaffirmed the view expressed in the trial. Upon appeal, appellee took the position there was no error because appellant had failed to submit an instruction meeting the rule in *Seneris v. Haas*, 45 Cal.2d 811, 291 P.2d 915. The district court of appeals did not agree. In reversing the trial court, the court of appeals said: "Proffering a written instruction under the circumstances would have been an idle act, and failure to perform an idle act does not constitute a waiver of a legal right. (Civ. Code s 3532; *Robinson v. Puls*, 28 Cal.2d 664, 667, 171 P.2d 430.)"

The specific issue before us has not been directly addressed in this jurisdiction, nor do we have a statute which governs, but in the case of *Overholt v. Merchants & Planters Bank*, 637 S.W.2d 463 (Tenn.App. 1982) our court said:

It is well settled in this jurisdiction that "... a tender is unnecessary when it is reasonably certain that the tender will be refused." *Greener & Sons v. Southern Ry. Co.*, 155 Tenn. 486, 290 S.W. 988 (1927); *Cox v. Equitable Life Assur. Soc. of U.S.*, 22 Tenn.App. 311, 122 S.W.2d 823 (1938).

There is a well-recognized common law maxim that "the law will not indulge in idle formalities, or do vain or futile acts." 15-A C.J.S. Common Law § 14 pp. 68, 69. Also to be considered is that the failure of counsel to tender a written instruction on assumption of the risk would have imposed no inconvenience to the court since it is fully covered in Tennessee Pattern Jury Instruction 4.30.

The elements of assumption of the risk are well stated in *Ellithorpe v. Ford Motor Co.*, 503 S.W.2d 516 (Tenn. 1973) where the court said:

To fulfill the assumption of risk test under Tennessee Law, however, three requirements must be met. The plaintiff must (1) discover the defect, (2) fully understand the danger it presents to her, then (3) disregard this known danger and voluntarily expose herself to it. *Rogers v. Garrett*, 217 Tenn. 282, 397 S.W.2d 372 [1965]. Reasonable minds could differ as to whether these three requirements were met by plaintiff, and in such a case, the question is one for the jury to decide. *Rogers v. Garrett*, *supra* [397 S.W.2d] at 374; *City Specialty Stores, Inc. v. Bonner*, 252 F.2d 501 [6th Cir. 1958].

The element of discovery by the plaintiff is measured by an objective standard. In *Draper v. Louisville & N.R. Co.*, 17 Tenn.App. 213, 220, 66 S.W.2d 1003 (1933) the court of appeals explained the objective standard:

If the plaintiff had knowledge of [the danger] or if the risk and danger therein involved were so obvious that an ordinarily prudent person under similar circumstances would have known the risk and appreciated the danger therefrom, then in undertaking the performance of the task under these conditions he must be held to have assumed such risks and dangers as were incident thereto.

*Draper v. Louisville & N.R. Co.*, at p. 220, 66 S.W.2d 1003.

*Draper* was cited and followed by the court of appeals in *Wilson v. Lindamood Farms, Inc.*, 675 S.W.2d 187 (Tenn.App. 1984), which also quoted Prosser's *Law of Torts*, 4th Ed., at page 448, in regards to the objective standard of assumption of the risk by stating that "there are certain risks which anyone of adult age must be taken to appreciate."

■ We cannot agree with the trial court that there was no showing of the elements of assumption of the risk in the case at bar. Particularly telling of the danger involved was a series of pictures introduced by the Defendant of the NBD warehouse at the time the accident occurred. The pictures portray numerous high stacks of books with little or no support to keep them from falling. Some of the stacks are visibly leaning and could fall with little or no provocation. The jury could have easily concluded the Plaintiff should have recognized the danger of these books' falling, but voluntarily exposed himself to the danger.

In addressing the necessity of the trial court to instruct the jury on the issues of the case and in holding it was reversible error to fail to do so, our supreme court, in the case of *Cole v. Woods*, 548 S.W.2d 640 (Tenn.1977), speaking through Justice Henry, said: "It is the duty of the trial judge to instruct on every issue of fact or theory of the case raised by the pleadings and supported by the proof. *Monday v. Millsaps*, 37 Tenn.App. 371, 264 S.W.2d 6 (1953); *Taylor v. State*, 212 Tenn. 187, 369 S.W.2d 385 (1963)."

In view of the fact Defendant relied upon assumption of the risk in its pleadings and offered proof upon which the jury could have found the Plaintiff did assume the risk, we hold it was prejudicial not to instruct the jury upon this issue.

■ The Appellant also insists it was error for the trial court not to grant a new trial based on the misconduct of juror Betty New, who responded falsely to questions asked by the court and counsel during voir dire concerning her own litigation history. Ms. New was not one of the original 12 jurors from her panel seated in the jury box, but the court instructed the entire panel as follows: "Remember to listen carefully to the questions addressed to the 12 jurors in the box, so that [if] you have a positive response to any of the questions asked the jurors, in case you are called in you can state that you have a positive response and tell us what it is, rather than the attorneys having to repeat all the questions again." Later, Ms. New was called to replace one of the jurors who had been excused. At that time the court asked: ".... Now the four new prospective jurors, have you all been able to hear the questions, basically about whether you know any of the attorneys or the parties, *ever been a plaintiff or defendant in a lawsuit or close members of your family*, any of you employed by Arcata or close members of the family, or heard the possible witnesses read, whether you know any of them. Do any of the four have a positive response to any of these questions?" (Emphasis ours.) In response to this question Ms. New said she knew one of the parties but did not mention her litigation history. Later, after counsel had interrogated other jurors quite extensively, Ms. New stated: "Excuse me, Your Honor, I also have a positive response to that, I got off on talking about Emory and Louie and forgot. Yes, I did have a case, Mr. Culbertson was my attorney.

"THE COURT: How long ago?

"MS. NEW: Six or eight years ago.

"THE COURT: Would it make any difference?

"MS. NEW: Not to me, no, none whatsoever."

After the trial of the case at bar, counsel for the Plaintiffs learned Ms. New had been the plaintiff in three separate personal injury cases and a workers compensation case. Counsel for the Defendant filed an affidavit stating that, had he been made aware of Ms. New's litigation record, he would have exercised one of his peremptory challenges and excused her as a juror.

■ The case of *Durham v. State*, 182 Tenn. 577, 188 S.W.2d 555 (Tenn.1945) points out there are two distinct classic causes for challenging the qualifications of jurors. One class is called "propter defectum" (Lat.) which relates to the jurors' technical qualifications such as being a minor, an alien, or lacking ·other statutory qualifications. The other class is "propter affectum" (Lat.) which relates to the jurors' qualifications because of bias, prejudice, affiliation, etc. If the disqualification

or objection to a juror falls in the class of propter defectum, the challenge shall be made before the verdict in the case. But if the challenge to the juror falls in the class of propter affectum, that is bias, prejudice, etc., the challenge is valid even though it is not made until after the verdict. The challenge by Appellant of Ms. New's qualifications fall within the propter affectum clause and must be considered. She had been the plaintiff in four lawsuits involving personal injuries and in at least one of those cases she was seeking damages for neck and back injuries—the same type of injuries for which the Plaintiff in the case at bar sought recovery.

In the case of *Durham v. State, supra,* the appellant was challenging a juror for concealing his litigation history. Our supreme court, speaking through Justice Chambliss, after reviewing his history, asked this question: "Does there not arise on the facts above shown a legal presumption of the want of that impartiality which our constitutional requirement contemplates?" The court further said:

> *International Agricultural Corp. v. Willette, supra,* [120 Me. 423, 115 A. 170] [1921] was a suit to recover against a fertilizer company on a shipment of adulterated fertilizer. A new trial was granted by the supreme court on a showing, although made after verdict, that a juror was at the time interested in a claim on similar grounds against another and different company, and when the juror had failed to disclose this fact in response to appropriate questioning on his voir dire examination. Declaring that ... "*at the very basis of our trial system stands a disinterested, unprejudiced jury as triers of the fact, a body every member of which should be free from bias and prejudice, ....*" (Emphasis ours.)

188 S.W.2d at 558.

In the more recent case of *Price v. Mercury Supply Company, Inc.,* 682 S.W.2d 924 (Tenn.App.1984) the jurors were asked if any of them, or any member of their family, knew any of the six witnesses whose names were read to the jury. None of the jurors gave an answer. After trial it was learned the son of one of the jurors was a fellow employee with one of the witnesses whose name was read to the jury. The trial court overruled the appellant's motion for a new trial challenging the misconduct of the juror. On appeal this court reversed, saying:

> The ground for challenge in the instant case is the deliberate withholding of information asked for on voir dire. This amounts to false swearing and does raise the presumption of bias and partiality. Mrs. Nichols cannot be said to have entered the jury box with an indifferent mind toward the parties. From this false swearing it must be presumed that Mrs. Nichols was deprived of the ability or capacity to act impartially and disinterestedly. The challenge in this lawsuit is of the propter affectum class.

682 S.W.2d at 924.

We find the court was in error in refusing to instruct the jury on assumption of the risk and in denying Defendant's motion for a new trial based upon the misconduct of juror New, and the case is remanded for a new trial. The cost of this appeal is taxed to the Appellees.

WILLIAM H. INMAN, Special Judge, concurs.

FRANKS, J., dissents.

FRANKS, Judge, dissenting.

In my view, a *prima facie* case of assumption of the risk was not established yet the court reverses the trial court for omitting to charge the assumption of the risk doctrine where the charge was not demanded in writing, as required by T.R.Civ.P., Rule 51.01.[1]

The succinct holding in *Rule,* cited in the majority opinion, is:

> We hold that Rule 51.02 of the Tennessee Rules of Civil Procedure has not abolished or altered the rule announced

---

1. T.R.Civ.P., Rule 51.01 *Requests for Instructions*
 At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests....

in the *Provence* [*v. Williams,* 62 Tenn. App. 371, 462 S.W.2d 885 (1970)] and *Holmes* [*v. American Bakeries Co.,* 62 Tenn.App. 601, 466 S.W.2d 502 (1970)] cases, *supra,* that in order to predicate error upon an alleged omission in the instructions given to the jury by the trial judge he must have pointed out such omission to the trial judge at trial *by an appropriate request for instruction.* [Emphasis supplied.]

*Rule v. Empire Gas Corp.,* 563 S.W.2d 551, 554 (Tenn.1978).

At common law, a request to charge affirmative defenses could only be made at the conclusion of the general charge and it was a party's "duty to offer a special request" where the charge was meager or insufficient. *Womac v. Castell,* 200 Tenn. 588, 292 S.W.2d 782 (1956). T.R.Civ.P., Rule 51, relaxed the requirement that special requests could only be received at the conclusion of the general charge but reaffirmed that the request had to be made and written.

In overruling the motion for a new trial on the failure to instruct, the trial court stressed no written request was made. Indeed, the pre-trial order reads: "[s]pecial instructions to the jury requests shall be submitted to the court" five days before the trial date. The appellant stands in violation of the pre-trial order, T.R.Civ.P., Rule 51 and *Rule* yet the majority excuses this on the basis of an informal request, made in chambers, which is not even in the record before us except in an acknowledging remark of the trial court when considering the motion for a new trial. Would the majority hold a verbal request made at the conclusion of a general charge and denied by the trial court, to be sufficient compliance?

The majority's holding is in contravention of a settled rule of law and places an undue burden on trial judges. It is a wise and salutary rule that the trial judge is not to be reversed on meager or inadequate instruction to a jury unless a written instruction is timely filed with the court and denied.

Appellant's issue is without merit, nor would I reverse the judgment on the other issue discussed by the majority.